## 9973

### SQUIRE v. SOUTHERN RY. CO.

#### (96 S. E. 152.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—SUFFI-CIENCY OF EVIDENCE.—In an action against a railway for death of its servant who fell from a walkway on a coal chute to a platform some 14 feet below, evidence *held* not to warrant a reasonable inference that the walkway itself was in such lack of repair ·as to suggest negligence by the railroad.

2. MASTER AND SERVANT—INJURIES TO SERVANT—QUESTIONS FOR JURY.—In such action, whether coal falling out of the bottom of a car and striking ties on its way between them to the platform below was likely to rebound onto the walkway and strike the servant, and whether the walkway should have been protected by a rail or other device to secure employees from the force of the rebounding coal and a consequent fall, *held* for the jury.

3. MASTER AND SERVANT—INJURIES TO SERVANT—SUFFICIENCY OF PRO-TECTION—QUESTION OF FACT.—In such action, whether the way of escape from a fall for the servant, contemplated by the railroad, that he should hold to the ties or hold to a small curve handhold, was a reasonably sufficient way of escape, *held* an issue of fact.

4. MASTER AND SERVANT—SAFE PLACE TO WORK—CUSTOM.—That a rail-road's witnesses had never seen in a wide experience handrails on a walkway to protect an operator was not conclusive of the rail-road's duty to furnish or not to furnish such handrails for the pro-tection of its servant.

5. MASTER AND SERVANT—INJURIES TO SERVANT—MODE OF ACCIDENT—QUESTION FOR JURY.—In an action against a railroad for death of its servant in a fall from a walkway on a coal chute, whether the servant fell while undoing a ratchet on a coal car, and because hit by falling coal, *held* for the jury under the .evidence. ·

6: DEATH—INTERSTATE COMMERCE—ACCIDENT TO RAILROAD SERVANT.—The rights of a railroad and the administratrix of its deceased serv-

ant, killed in the cause of his employment, are fixed by the laws of the State or by the laws of Congress, depending on which service, State or interstate, the servant was in at the instant of his killing.

7. MASTER AND SERVANT—INTERSTATE COMMERCE—ENGAGEMENT IN— QUESTION FOR JURY.—In an action against a railroad for death of its servant in a fall, whether the servant, at the instant of his killing, was engaged in interstate commerce, *held* for the jury under the evidence.

8. MASTER AND SERVANT—INJURIES TO SERVANT—INSTRUCTION—INTERSTATE COMMERCE.—In such action, after submission of the issue to them, the jury should have been charged about the different duties and liabilities of the railroad arising under the two laws, State and Federal, whichever was applicable.

Before SEASE, J., Orangeburg, Spring term, 1917. Reversed.

Action by Ellen Squire, as administratrix of the estate of William Squire, deceased, against the Southern Railway Company. From judgment for plaintiff, defendant appeals.

*Messrs. Raysor & Summers,* for appellant, cite: *As to error in permitting plaintiff to amend her complaint at the trial:* 80 S. C. 217; Code of Procedure, sec. 194; 50 S. C. 398; 27 S. E. 873; 64 S. C. 491; 42 S. E. 427; 70 S. C. 270; 49 S. E. 863; 75 S. C. 350; 74 S. C. 236, 244; 54 S. E. 375. *As to refusal of Judge to direct a verdict for defendant:* 90 S. C. 40; 66 S. C. 256; 57 S. C. 433; 179 U. S. 663; 158 Pac. 977; 233 Fed. 31; 158 Pac. 977. *The action should have been brought and tried under the Federal Employers' Liability Act:* 37 Sup. Ct. R. 4; 233 U. S. 473; 34 S. Ct. R. 646; 238 U. S. 473; 34 S. Ct. R. 646; 238 U. S. 260, 263; 35 Sup. Ct. R. 780; 241 U. S. 177; 36 S. Ct. 517; 146 Pac. 1097; 64 Oregon 597; 131 Pac. 507; 129 Pac. 151; 46 L. R. A. (N. S.) 1121; 203 Fed. 956; 37 S. Ct. 4; 37 Supt. Ct. 246; 100 S. C. 294; 37 S. Ct. R. 356-7; 37 S. Ct. 703; 37 S. Ct. 170; 233 Fed. 137; 233 U. S. 405; 102 S. C. 281. *The jury should have been allowed to pass upon the nature of the employment, in which deceased was engaged:* 157 Ky. 453; 163 S. W. 461; 148 S. W. 145; 159 Ky. 237; 167

S. W. 128; 146 Ky. 240; 160 S. W. 945; 159 Ky. 718; 169 S. W. 471; 164 S. W. 857; 206 Fed. 868; 91 Atl. 650 (Conn. 1914).

*Messrs. Adam H. Moss* and *W. Claude Martin,* for respondent, cite: *As to allowance of amendment to complaint:* 241 U. S. 477; 36 Sup. Ct. Rep. 517; 101 S. C. 105; 226 U. S. 570; 86 S. C. 98. *As to prima facie evidence of negligence:* 101 S. C. 83; 61 S. C. 488; 72 S. C. 411; 75 S. C. 305. *As to knowledge by employee of the unsafe condition of any machinery, ways or appliances:* 66 S. C. 317; 101 S. C. 84. *As to this case coming within the State law and not under the Federal Employers' Liability Act:* 36 Sup. Ct. Rep. 517; 37 Sup. Ct. Rep. 515; Advance Sheets, Sup. Ct., July 1st, 1917, 515; 37 Sup. Ct. Rep. 116; Advance Sheets, Sup. Ct. Rep., February 1, 1917, 118; 101 S. C. 108. *As to the charge of the trial Judge that "The facts show that this is a case under the State statute, known as Lord Campbell's Act:"* 100 S. C. 297; 37 Sup. Rep. 117.

May 21, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action for tort to the person; verdict for the plaintiff for $1,000 actual damages; appeal by the defendant.

There are 11 exceptions, but the appellant has with great good sense reduced them in the brief to three issues. They are these: (1) The Court ought to have directed a verdict for the defendant, for the reason that there is no evidence as to how the deceased came to his death, and there is, therefore, no proof of negligence. (2) The defendant's liability was fixed by act of Congress, and not by statute of the legislature. (3) The Court should, therefore, have left it to the jury under proper instructions to find the fact whether at

the instant of decedent's death he was engaged in interstate commerce; and the Court should then have applied the law of Congress or legislature according to the jury's finding of the fact. These are the circumstances of the case about which there is no dispute.

A negro named William Squire was a laborer for the Southern Railway. He was 25 or 26 years old. At the time in question he was on the night shift working at a coal chute in Branchville. At the instant time, around 6 o'clock p. m. in July, 1916, the deceased was opening the bottom of a flat bottom steel car loaded with coal to loose the coal from the car onto a platform some 14 feet below. The car was mounted on a trestle above the platform. In order to open the bottom of the car by turning a ratchet on the outside of the car the operator stands on a walkway 20 inches wide, built along the end of the ties and parallel to the rails, and that walkway had no rail around it. While engaged in that business the operator fell from the walkway down onto the platform some 14 feet below the walkway and suffered the fracture of his skull and the dislocation of his neck, which instantly killed him. An intelligent expert witness for the defendant thus described the method by which the car was unloaded:

"I am to some extent acquainted with the steel coal cars. These heavy steel cars carry 100,000 pounds. There is a shaft there that runs throungh the car. There is a latch that has a little lever on it. You knock that out. You hit it with a hammer or a bar and knock it loose, and that lets the doors drop, and the coal falls through the doors and hits between the rails. The tendency would be for it to drop right through between the stringers. The coal has to drop in between them. There are openings between the crossties so that the coal will not lodge there. If they were using hopper cars, the man who opened the doors could stand back

behind the door on the gangway and the coal could not get to him."

We come now to appellant's first point before stated.

The evidence does not warrant a reasonable inference that the walkway—that is to say, the 20-inch way—itself was in such lack of repair as to suggest negligence by the defendant. A witness for the plaintiff testified "there was nothing wrong about the condition of the walkway; they were all right."

The testimony does, however, make these issues: (1) Was coal falling out of the bottom of the car and striking the ties on its way betwixt them to the platform below, likely to rebound onto the walkway and strike the operator? And (2) ought the walkway to have been protected by a rail or other device to secure the operators from the force of such probable rebounding coal and a consequent fall off the walkway? Several witnesses for the plaintiff testified that coal habitually rebounded onto the walkway. The master carpenter for the defendant, referring to the falling coal, testified:

"Most of it goes between the stringers. Some little portion might go out on the side; usually not much of it. If you were right there where it fell and it hit you, it might hurt you, but you don't have to be there."

Mr. Wassum, superintendent of the defendant, testified that the hopper bottomed cars, unloaded at the same place, may throw coal out on the walkway. Mr. Heaton, car inspector, referring to the falling coal, testified:

"A little bit of it would fall over the walkway; sometimes it hit the rails, and a little bit might fall outside. A little bit falls outside almost every time, but very little."

Richard Weeks, for the defendant, testified to the same effect. In the event coal did fall on the walkway, Heaton,

for the defendant, testified, "the employees could hold on the ties." Mr. Maxwell, for the defendant, testified that:

"On the lower part of a steel car there is a portion of the girder that drops below the bottom with a little curve that comes under it that extends for the full length of the car."

The defendant, therefore, in the event of accident had contemplated a way of escape for the operator; that it to say, by holding to the ties, or by holding to the little curve handhold. Whether that was a reasonably sufficient way of escape makes an issue of fact.

It is true all the witnesses for the defendant testified without reserve that they had never seen in a wide experience hand rails on a walkway to protect an operator. Yet that is not conclusive of the defendant's duty. *Sturdyvin v. Railroad,* 98 S. C. 125, 82 S. E. 275.

Whether the respondent fell while undoing the ratchet, and because hit by falling coal, depended upon all the circumstances of the case. No witness saw him hit, and no witness saw him fall; but the circumstances were sufficient to go to the jury and help it to a conclusion thereabout. *Thornton v. Seaboard,* 98 S. C. 379, 82 S. E. 433; *Padgett v. Seaboard,* 99 S. C. 364, 83 S. E. 633.

The next point involves that often shadowy issue whether or not at the instant of his hurt the deceased was employed about interstate commerce. As before stated, the admitted fact is that Squire at the instant of his fall was unloading coal from a Tennessee car onto a platform in South Carolina for the future use by the engines of the defendant, some State and some interstate.

The appellant contends: (1) That in the act of unloading Squire was engaged in interstate commerce; and (2) that, furthermore, Squire's purpose was next and within a few hours to load the coal so felled on the platform onto inter-

state engines, and that such act of Squire in unloading was so closely related to his purpose to subsequently reload as to constitute his act done as a part of his act purposed to be done thereafter. On the second issue it is admitted by respondent's counsel that:

"Some time during the night of the 16th, if he had not been killed that afternoon, Squire would have used this coal to coal the many locomotives of the defendant which pass through Branchville. Two of these locomotives were engaged in interstate commerce."

We are of the opinion that the Court was not warranted to instruct the jury that the transaction was to be governed exclusively by the laws of the State. The rights of the parties are fixed by the laws of the State or by the laws of Congress, as depends upon which service Squire was in at the instant of his killing; and that issue of fact ought to have at least been submitted to the jury, and the jury ought then to have been charged about the differing duties and liabilities arising under the two laws. *L. & N. R. R. v. Parker,* 242 U. S. 14, 37 Sup. Ct. 4, 61 L. Ed. 119; *Cook v. So. R. R.,* 96 S. E. 148; *Fayssoux v. S. A. L.,* 96 S. E. 150.

The judgment is reversed, and a new trial is ordered.