## 12321

### TYNER, ADMINISTRATOR, v. ATLANTIC COAST LINE RAILROAD COMPANY

(146 S. E., 663)

90

91

*Messrs. Thos. W. Davis, F. B. Grier, Hyde, Mann &
Figg,* and *V. E. Phelps,* for appellant,

*Messrs. Logan & Grace,* and *Lionel K. Legge,* for respondent,

November 16, 1927.

The opinion of the Court was delivered by Mr. Justice Stabler.

On January 6, 1923, George A. Marshall, employed as a switchman by the defendant railroad company, was killed

while in such employment. He left surviving him a widow and three small children, for whose benefit this action was brought under the Federal Employers' Liability Act (45 USCA, §§ 51–59) by the plaintiff as administrator of Marshall's estate. It was agreed at the trial of the case that at the time Marshall met his death both he and the railroad company were engaged in interstate commerce.

The plaintiff, upon information and belief, alleges that, at the time Marshall was killed, he was engaged in the performance of his duties as a switchman on an engine and train of cars moving over defendant's main line of tracks near and in the direction of the City of Charleston; that it was about 3 o'clock in the morning and was dark and foggy; that near the city the train of cars and engine were stopped because of some trouble with the brakes on some of the cars, and that Marshall, in the course of his employment and duty, got down to the ground to examine into and correct the trouble; that the defendant, in violation of its duty to furnish a reasonably safe roadbed and track free from obstructions for the use of its employees, had placed and maintained a signal device or obstruction in such close proximity to the track as not to leave a sufficient space intervening between it and the side of the train, and so close as to interfere with the proper operation of the defendant's trains; and that, upon the train's proceeding forward, while Marshall was mounting the ladder of one of the cars or was examining the defective car referred to, he was struck by the signal device, and was so injured as to cause his death. The plaintiff alleged that Marshall's death resulted from the negligent and reckless acts of the defendant, in the following particulars:

"(a) In failing and omitting to furnish the said decedent a reasonably safe place to work.

"(b) In failing and omitting to furnish a reasonably safe roadbed and track free from obstructions.

"(c) In failing and omitting to place and maintain said signal device at a reasonably safe distance from the track.

"(d) In causing and allowing said signal device or obstructions to be placed and maintained too close to the track.

"(e) In causing and allowing said signal device or obstructions to be placed and maintained in such close proximity to the track as to leave insufficient space between it and the side of a train within which employees might safely perform the duties incident to their employment and the proper operating of defendant's trains.

"(f) In causing and allowing said signal device or obstruction to be at the point, place and position the same was maintained.

"(g) In failing and omitting to notify or warn said decedent of the close proximity of said signal device or obstructions to the side of the train.

"(h) In causing and allowing a defective and bad order box car to be attached to and form a part of the train and to be transported by the engine to which decedent was attached.

"(i) In causing and allowing said engine and train of cars to be run at a high and dangerous and excessive rate of speed within the yard limits and block system of defendant and in violation of its rules and regulations governing the same."

The defendant pleaded that it had complied with a resolution of the South Carolina Railroad Commission, set out in its answer, in the erection of the signal device mentioned in the complaint, set up the assumption of risk on the part of the decedent, and pleaded contributory negligence on the part of Marshall, as follows:

"(a) In not going directly to the roof of the freight car on which he was riding as instructed by the conductor of said train, but in remaining on the side of the car, contrary to said orders and instructions.

"(b) In not keeping a proper lookout for the signal devices and other obstructions which are ordinarily erected on the side of tracks of the defendant, near said tracks.

"(c) In failing and omitting to keep a proper lookout for the semaphore mentioned in the complaint herein, whose presence and location were well known to the deceased.

"(d) In leaning outward from the ladder of said freight car so far as to bring his body in contact with the said semaphore erected at a greater distance from the track than is required by the regulations of the South Carolina Railroad Commission, hereinbefore set forth."

The case came on for trial in the Court of Common Pleas for Charleston County, and a verdict was rendered in favor of the plaintiff, on October 10, 1925, in the sum of $28,-800.00. From judgment entered on the verdict, the defendant appeals to this Court.

There are twenty-eight exceptions, but the appellant does not argue them all, relying upon six grounds of alleged error for reversal. We shall adopt this grouping for the purpose of considering the appeal.

I. The first ground of alleged error is raised by the appellant's fourteenth and fifteenth exceptions and is as follows: "The Court committed reversible error in its charge on the measure of damages and in refusing to charge that only the present cash value of the reasonably expected financial loss to the beneficiaries would be awarded."

In our consideration of this ground of alleged error, we shall keep in mind the important principle enunciated by the Supreme Court of the United States in *Chesapeake & O. R. Co. v. Kelly,* 241 U. S., 485, 36 S. Ct., 630, 60 L. Ed., 1117, L. R. A., 1917-F, 367: "But the question of the proper measure of damages is inseparably connected with the right of action, and in cases arising under the Federal Employers' Liability Act it must be settled according to general principles of law as administered in the Federal Courts."

It will be noted that the objection is (1) to the charge given by the trial Judge, as requested by the plaintiff; and (2) to his alleged refusal to charge the appellant's request embodying its conception of a proper charge on the subject.

As to the measure of damages which the respondent was entitled to recover, if entitled to recover at all, the trial Court charged the respondent's fourth request as follows: "The jury are instructed that if they come to the conclusion from the evidence in this case that the plaintiff is entitled to a verdict, that the measure of recovery (if you find for the plaintiff), is such an amount in damages as will fairly and reasonably compensate the widow of Mr. Marshall and his dependent children for the loss of pecuniary benefits which they might reasonably have received if the deceased had not been killed, not exceeding the amount claimed, to wit, Fifty Thousand Dollars."

In connection with this charge, the trial Judge added: "I charge you that and to make it plainer that is the rule laid down in a number of cases, some say the measure of damages is the commercial value of the deceased to his widow and children, what was he worth to them?"

The appellant contends that this charge of the respondent's fourth request on the measure of damages was reversible error, in that it permitted and required the "award in a lump sum of whatever pecuniary benefits the beneficiaries would have received, without making any allowance for the payment of those benefits at once instead of at the end of decedent's expectancy of life"—in that, in other words, Judge DeVore failed to charge the jury that, in the fixing of the amount of any damages to which the respondent might be entitled, the verdict should not be an aggregate lump sum of all of the constituent benefits which the bneficiaries would have received if the decedent had not been killed, but should be only the present cash value of all such benefits. They contend further that the words added by the Circuit Judge to his charge of the respondent's fourth request did not in any

way cure the error already made, but only made such error more pronounced, as the language used was indefinite and uncertain in its meaning.

The matter of the proper measure of damages, in an action brought under the Federal Employers' Liability Act, has been passed upon in a number of cases by the Supreme Court of the United States, and in the determination of the question here presented we turn for guidance to the principles of law enunciated in those cases.

The appellant here seems to rely upon the *Kelly case, supra,* in which the Court laid down the following as the correct rule: "The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased."

In that case, the Court went on to say: "So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future."

The trial Court in the *Kelly case* charged the jury as follows: "If the jury find for the plaintiff they will find the gross sum for the plaintiff against the defendant which must not exceed the probable earnings of Mat Kelly had he lived. The gross sum to be found for plaintiff, if the jury find for the plaintiff, must be the aggregate of the sums which the jury may find from the evidence and fix as the pecuniary loss above described, which each dependent member of Mat Kelly's family may have sustained by his death."

The Supreme Court of the United States held this to be error and not a correct statement of the proper measure of damages. When this charge is compared, however, with the charge in the case at bar, it does not appear that the *Kelly case* sustains the appellant's position; a casual examination

shows that the charge in the present case is entirely different from the charge in the *Kelly case* on the same point.

In the case of *Louisville & N. R. Co. v. Holloway*, 246 U. S., 525, 38 S. Ct., 379, 62 L. Ed., 867, the charge as to the proper measure of damages was practically the same as the respondent's fourth request charged in the present case. For the sake of comparison, it may be well to note the charge given in the *Holloway case*, which was as follows: "The measure of recovery, if you find for the plaintiff, being such an amount in damages as will fairly and reasonably compensate the widow of the said John G. Holloway, deceased, for the loss of pecuniary benefits she might reasonably have received if the deceased had not been killed, not exceeding the amount claimed; to wit: $50,000.00."

The railroad company appealed and alleged error, citing the *Kelly case, supra*, in support of its contention. On this point, Mr. Justice Brandeis, who delivered the opinion of the Court, said: "The instruction given, though general, was correct. It declared that the plaintiff was entitled to recover 'such an amount in damages as will fairly and reasonably compensate' the widow 'for the loss of pecuniary benefits she might reasonably have received' but for her husband's death. This ruling did not imply that the verdict should be for the aggregate of the several benefits payable at different times, without making any allowance for the fact that the whole amount of the verdict would be presently paid at one time. The instruction bore rather an implication to the contrary; for the sum was expressly stated to be that which would 'compensate.' The language used was similar to that in which this Court has since expressed, in *Chesapeake & O. R. Co. v. Kelly, supra*, p. 489 [of 241 U. S. (36 S. Ct., 630)], the measure of damages which should be applied."

In the *Holloway case*, however, the defendant requested that certain instructions be given the jury as to the proper measure of damages, which request the Court refused. On

appeal, such refusal was alleged as error on the part of the trial Court. With respect to this contention, Mr. Justice Brandeis said: "The company had, of course, the right to require that this general instruction be supplemented by another calling attention to the fact that, in estimating what amount would compensate the widow, future benefits must be considered at their present value. But it did not ask for any such instruction."

If measured by the holdings of the Court in the *Holloway case*, it cannot be said that the instruction of the trial Judge as to a proper measure of damages, contained in the respondent's fourth request to charge, was error; and the contention of the appellant, that such charge permitted and required the award by the jury in a lump sum of whatever pecuniary benefits the beneficiaries would have received if decedent had not been killed, without making any allowance and deduction for the payment of these benefits at once instead of at the end of decedent's life expectancy, must fail; for, as pointed out in the *Holloway case*, the instruction given "bore rather an implication to the contrary; for the sum was expressly stated to be that which would 'compensate.'" Hence, if there is any merit at all in the appellant's contention, it is in the claim that the trial Judge erred in his refusal to charge the appellant's sixth request. This request was as follows:

"I charge you that under the Federal Employers' Liability Act the measure of damages recoverable are limited to such loss as results because the dependent relatives have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee. The damage is limited strictly to the financial loss sustained and is always the present cash value of the future benefits of which the beneficiaries were deprived by the death, making adequate allowance according to the circumstances, for the earning power of money. The excess earnings of the deceased over the amount reasonably to be expected to be con-

tributed to the beneficiaries, cannot be reduced to a cash value and assessed as an element of damage.

"If you should find a verdict in favor of the plaintiff in this case, the verdict should be computed strictly in accordance with these instructions, and the plaintiff is only entitled to a verdict for the present cash value of what the deceased might reasonably have been expected to give to his wife and children, had he lived."

The respondent's position is (1) that the trial Judge did not refuse to charge this request of appellant; and (2) that, even if he did refuse to so charge, the respondent's fourth request as charged by the Court was a full and correct statement of the law; and (3) that the further charge by the Court, in connection with the charge of respondent's request, that the measure of damages is "the commercial value of the deceased to his widow and children," emphasized the fact that the jury, in arriving at the value of the future benefits, should take in consideration only their present cash value.

In connection with appellant's request to charge, the Court said: "Now, with reference to your 6th request to charge, that is in reference to damages, I am going to charge as to the measure of damages as set forth in the plaintiff's request. About the only difference in your request and the plaintiff's is that you state what damages are recoverable and go on to state what damages are not recoverable."

From this language we do not think it can be fairly contended that the Court charged the jury the appellant's sixth request; he only indicated his opinion of the difference between the two requests. We think, however, the real difference is that the respondent's request stated the law correctly but in general terms, while the appellant's request stated it in more specific terms. This being true, under the *Holloway case,* the appellant was entitled to have its request charged, unless, as contended by the respondent, the additional words used by the trial Court in connection with his charge of the

respondent's fourth request adequately instructed the jury that the measure of damages is the present cash value of the future benefits spoken of.

We cannot say that the additional language of the trial Judge, used in connection with his charge of the respondent's fourth request, was misleading or indefinite, as contended for by the appellant. The words of the trial Court, "the measure of damages is the commercial value of the deceased to his widow and children," taken in connection with the charge already made, that the measure of damages was such an amount as would "fairly and reasonably compensate the widow of Marshall and his dependent children for the loss of pecuniary benefits which they might reasonably have received if the deceased had not been killed," clearly indicated to the jury that the measure of damages was what the decedent would be reasonably worth to the widow and children at the present time if he had not been killed; in other words, to quote the language used by the appellant itself, "the present cash value of what the deceased might reasonably have been expected to give his wife and children, had he lived."

We think that the charge as to the measure of damages, taken as a whole, was a correct statement of the governing legal principles as laid down by the Supreme Court of the United States. If there was error in the refusal to charge the appellant's sixth request, it was harmless.

II. The second ground of alleged error is raised by the appellant's nineteenth, twentieth, and twenty-second exceptions, relates to the Court's charge on assumption of risk, and is thus stated: "The Court erred in charging that an employee did not assume any extraordinary or hazardous risk arising out of his employment."

The appellant objects to the following charge of the Court as being an incorrect statement of the law:

"The defendant also sets up the defense of assumption of risk. Whenever a master employs a servant the servant as-

sumes all the risks that are ordinarily incident to the work he is employed to do, just as much as if he was under a written contract to that effect, but the servant does not assume any extraordinary risks, only the risks incident to his employment, and those are the only risks he assumes, any extraordinary or hazardous risks he does not assume.

"I charge you as a matter of law that there are only two ways, or one of two ways that the Railroad Company can relieve themselves of liability under this Federal Act, and one is to show by the testimony that the plaintiff's negligence was the sole cause of the injury, or death in this case. If the evidence satisfies you that his negligence was the sole cause of his death then he could not recover, and the other way is to show that he assumed the risk that caused his death, but if the risk was a hazardous risk that would be the one that he does not assume in his contract of hire."

The appellant contends that this charge of the trial Court was error, in that it states that the employee does not assume any extraordinary or hazardous risk arising out of his employment, whereas as the appellant expressly pleaded the defense of assumed risk and alleged that the dangers from the signal device, etc., were obvious, and hence, assumed by the decedent, and the evidence also raised this issue.

In *Boldt v. Pennsylvania Railroad Co.*, 245 U. S., 441, 38 S. Ct., 139, 62 L. Ed., 385, the Court lays down the following as a correct statement of the law

"In *Seaboard Air Line R. Co. v. Horton*, 233 U. S., 492, 503, 58 L. Ed., 1062, 1069, L. R. A., 1915-C, 1, 34 S. Ct., 635 [639], Ann. Cas., 1915-B, 475, 8 N. C. C. A., 834, we said: 'It seems to us that § 4, in eliminating the defense of assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action." *Jacobs v. Southern R. Co.*, 241 U. S., 229, 235, 60 L. Ed., 970, 976, 36 S. Ct., 588.

"At common law the rule is well settled that a servant assumes extraordinary risks incident to his employment, or risks caused by the master's negligence which are obvious or fully known and appreciated by him."

It is conceded by the respondent that the trial Judge's charge in the case at bar "is not a full statement of the law of assumption of risk, in that it does not explain that a servant assumes extraordinary risk where he knows or appreciates the risk or danger, or where the risk is obvious or should by the exercise of due care be known and appreciated." But he contends that, in the latter portion of the charge, the Court cured any possible error by charging the appellant's fourth request as follows: "I charge you that where one is in the employment of a railroad company and is injured by some appliance or apparatus of the railroad company, even though the railroad company may be negligent, the employee cannot recover against it for his injuries where the dangers of the appliance or apparatus were obvious and were known or should have been known to him in the exercise of due care."

The risks or perils ordinarily and normally incident to the employment, frequently called "ordinary risks," "are such as are to be expected from the particular character of the service in which the employee is engaged, and have generally been defined as those which remain after the master, or one rightly exercising the authority of the master, has exercised due care to prevent or avoid them—which cannot be obviated or avoided by the exercise of due care on the part of the master." 39 C. J., 704.

An extraordinary risk, on the other hand, is—exactly as the name implies—"one lying outside of the sphere of the normal, arising out of conditions not usual in the master's business, and, in applying the doctrine of assumption of risk, one which may be obviated by the exercise of reasonable care on the master's part." 39 C. J., 691.

See, also, *Seaboard Air Line Railway Co. v. Horton,* 233 U. S., 492, 34 S. Ct., 635, 58 L. Ed., 1062, L. R. A., 1915-C, 1, Ann. Cas., 1915-B, 475.

The general rule is that the servant assumes such risks as are ordinarily incident to the service, but does not assume extraordinary risks unless they are known to and appreciated by him, or are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them.

Whether the company furnished a reasonably safe place for decedent to work was an issue under the pleadings and the testimony in this case. The extraordinary risk which, the appellant contends, was assumed by the decedent, involves this place for work, and arose from the presence of an appliance known as a semaphore close beside the track. At the request of the appellant, the trial Judge charged, subsequently to the charge complained of, with reference to appliances and apparatus, that an employee assumes the risks or dangers which are obvious and known to him or should have been known to him in the exercise of due care. This charge contains a correct statement of the law applicable to the assumption of extraordinary risks under the testimony in this case, and rendered harmless any error in the charge complained of by the appellant.

III. Under the third head of alleged error, the appellant submits: "The Court erred in submitting issues of negligence not supported by any evidence and not a proximate cause of the injury, namely, negligence in allowing a defective box car in the train, and in allowing the train to be run at a dangerous and excessive rate of speed, in violation of rules."

This alleged ground of error is raised by the appellant's twenty-fourth, twenty-fifth, and eleventh and twelfth exceptions.

The charge objected to by the appellant is as follows:

Quoting from complaint: "(g) In failing and omitting to notify or warn said decedent of the close proximity of the said signal device or obstruction to the side of the train.

"Well, if the deceased did not know it was there, and by reasonable observation would not have known it, it was the duty of the railroad company to warn him about it, but if the deceased knew that it was there it was not the duty of the railroad company to warn him. I don't know if he knew it was there, if he did it was useless for the railroad company to warn him, but if he did not know it was too close to the railroad track it would be their duty to warn him, but if he knew that it would not be their duty to warn him."

Quoting from complaint: "(h) In causing and allowing a defective and bad order box car to be attached to, and form a part of the train and to be transported by the engine to which decedent was attached.

"If the railroad company knew that, or by reasonable diligence could have known it, but whether that is so I don't know, but if it was negligence and carelessness, and that was the proximate cause of the death of the deceased the railroad company would be liable, but that is for you to say from the evidence."

It is not objected that these issues were not raised by the respondent's pleadings, but the appellant contends by its twenty-fourth and twenty-fifth exceptions that there was no evidence to support the specification of negligence, as charged by the trial Court, and that, as a matter of law, this alleged negligence could not be the proximate cause of the injury and death of the deceased.

Exceptions 11 and 12 impute error to Judge Memminger in refusing defendant's motion to strike out that portion of the complaint which set up these specifications of negligence, but it does not appear from the argument of the appellant that any stress is laid upon his refusal to grant the motion. The main question here is whether there was any evidence to support these allegations of negligence.

As to the question of the defective box car in the train, the testimony tended to show that there had been a wreck, and that three of the cars were being brought in; that Marshall, the switchman, saw fire flying from one of the wheels of the car, and that the brakes were "sticking" on the middle car; that Marshall and the conductor, Crawford, got down on the ground for the purpose of correcting the trouble; that the conductor pulled the release rod of the air brake and saw the piston go back in, and from this concluded everything was all right for going, and said to Marshall, "Let's go," and that the train moved forward; that he caught the last car and Marshall the middle car; and that, when he last saw Marshall, the latter was going up the side of the ladder. The conductor further stated in his testimony that the condition of the brakes "sticking" was dangerous and was likely to cause a wreck. The jury might infer from this testimony that Marshall, in the course of his duties, knowing that the condition of "sticking" brakes would likely cause a wreck, did not immediately go back to the top of the train, the place where he usually rode, but remained on the ladder attached to the side of the box car, for the purpose of observing, for a few minutes while the train was moving, whether the condition of the brakes had been entirely corrected, and that, while in this position on the moving train, he came in contact with the semaphore and was knocked from the ladder and killed. There can be no doubt that from the testimony the jury could reasonably arrive at the conclusion that the box car in the train was in a defective condition. This was a question of fact for the jury; it was also for the jury to say whether Marshall, at the time of his death, was acting within the scope of his duty in remaining upon the ladder on the side of the car, if he did remain there, and whether in so acting he was exercising due care.

The appellant further contends that the charge of the trial Judge as to the speed of the train was objectionable, for the reason that the testimony showed

that the train was moving at a rate of not more than 20 or 25 miles an hour, which was not excessive, that such evidence did not tend to show any negligence on the part of the appellant, and that, as a matter of law, such rate of speed could not be the proximate or efficient cause of the injury complained of.

· We think, however, in view of the testimony as to the side sway of an empty box car moving at a rate of 20 or 25 miles per hour, the speed of the train became an important issue, as to its clearance in passing the semaphore, in an action based upon the negligents acts of the appellant in placing the semaphore too close to the track.

The evidence showed that the base of the semaphore was four feet and ten inches from the track; that the distance between the track rails was four feet 7½ inches; that the width of the box car was nine feet 3½ inches; that the ladder at the side of the box car projected 2½ inches; that the side sway of the box car at 20 or 25 miles per hour was from 8 to 20 inches; that the speed of the train in passing the semaphore was from 20 to 25 miles per hour; and that Marshall, when last seen before the semaphore was reached, was on the ladder.

A study of these figures shows that the side of the box car projected beyond the track a distance of 2 feet 4 inches, which, with the projection of the ladder of 2½ inches more. made a total projection of 2 feet and 6½ inches; that when the car was at rest, the clearance between the semaphore and the ladder was 2 feet 3½ inches; that the clearance, when the car was moving at a speed of 20 to 25 miles per hour, would be 1 foot 7½ inches to 7½ inches. The jury might well infer from this testimony that, when the thickness or size of a man's body is taken into consideration, the semaphore, on account of the side sway of the car, was dangerously near the track with respect to an employee riding on the ladder attached to the side of the car.

Whether, under the circumstances and the facts disclosed by the testimony, the appellant was driving its train at a negligent rate of speed which was the proximate cause of Marshall's death, was an issue of fact for the jury.

The fact that the train was running at a speed of less than 30 miles per hour, the maximum rate allowed upon the main line under the railroad's rules, cannot affect the situation here, as the question is whether the railroad company exercised due care under all of the peculiar circumstances of the case.

The appellant has cited a number of cases in support of its position, but we do not deem it necessary to review them here. We find some points of similarity of fact in some of them to the case at bar; but the facts of no one of them are so similar to the facts of the present case as to give it any controlling influence.

IV. By its third and fifth exceptions, the appellant contends that the evidence does not show how the decedent was killed or the proximate cause of his death, but that his death was a matter of conjecture. The ground of alleged error is thus stated: "The evidence as to the cause of decedent's death was wholly speculative and insufficient to show the proximate cause of his death, and the Court erred in refusing motion for a directed verdict made on that ground."

We have already called attention to some of the evidence given in this case; we do not deem it necessary to review the entire testimony. Much of the evidence was circumstantial, but, taken as a whole, it was amply sufficient to carry the case to the jury. As stated, the evidence tended to show that the brakes on one of the cars were defective, a condition sufficiently dangerous to have caused a wreck; that this condition was discovered by the switchman, Marshall, who called the conductor's attention to it; that the train was stopped, and these two men attempted to rectify this defective condition; that the conductor did rectify same, as he

thought, and went back to a place of safety; that the switch-man did not return at once to the top of the car where he generally rode, but, inferentially, remained on the ladder attached to the side of the box car for the purpose of further watching and noting whether the brakes would work properly or continue to "stick"; and that the train of cars, running at a rate of from 20 to 25 miles per hour, which caused a sway of the empty box cars from 8 to 20 inches, passed the signal device located on the roadbed of the appellant while Marshall was on the ladder, and that thus he came in contact with the semaphore and was knocked from the ladder and killed.

The appellant, however, claims that the weakness of the plaintiff's position lies in the fact that there was no evidence whatever to sustain the allegations that the decedent was mounting the ladder on the side of a car, or was examining a defective car, in such a position as to be struck by the semaphore at the time he passed it.

As we have already pointed out, the conductor testified that the last time he saw Marshall, which was before the semaphore was reached, he was going up the ladder, and that he was found dead some feet from the semaphore. The testimony further tended to show that the dew had been brushed from the base of the semaphore, apparently through contact with some object. We think that the testimony, when considered as a whole, amply justified the jury in drawing the inference contended for by the respondent, that the decedent came to his death by reason of his being knocked from the ladder by the semaphore, and in drawing the further inference that, as the switchman knew of the danger arising from the "sticking" of the brakes, he had remained on the ladder for a few moments after the cars started in order to see whether the defective condition had been remedied, and whether there was any further danger from this cause, and that in so doing he was acting within the scope of his duties.

The appellant has cited a number of cases in support of its position. We have examined these cases, but none of them is conclusive or controlling of the present case. Each of the cases cited was decided upon its own peculiar facts, but the facts in no one of them are exactly the same as the facts of the case at bar.

If there is any testimony tending to establish the allegations of the complaint it is proper to submit the case to the jury. *Thornton v. Seaboard Air Line Ry.*, 98 S. C., 379, 82 S. E., 433; *Padgett v. Seaboard Air Line Ry.*, 99 S. C., 364; 83 S. E., 633. *Squire v. Southern Railway Co.*, 109 S. C., 400, 96 S. E., 152.

V. The appellant contends by its fifth ground of alleged error that: "There was no evidence to show negligence in placing a semaphore or signal device too close to the track, causing decedent's death."

We do not deem it necessary to go at length into the discussion of this alleged ground of error. What we have said in reference to the third ground applies here. The appellant seems to rest its justification, in placing the semaphore just where it was placed on its roadbed, upon the fact that it had complied, in so doing, with the requirements of a resolution of the Railroad Commission of South Carolina, and contends that such resolution is at least *prima facie* evidence that the semaphore was not negligently located; and that, as negligence cannot be presumed on the part of the railroad company, it was necessary, in order to make out a case of negligence against the company, to show clearly that the device was so close to the track as to endanger human life.

We think that it was for the jury to say whether the device was so close to the track as to endanger human life, under all of the facts and conditions disclosed by the testimony. The clearance between the semaphore and the ladder on the side of the car when it was standing still, the side sway of the car when it was moving at a rate of 20 or 25 miles per hour, which might or might not make it dangerous, in pass-

ing the semaphore, for one riding upon the ladder on the side of the car, with all the other testimony of the case, were properly submitted to the jury for their consideration in determining the negligence or the absence of negligence on the part of the appellant in placing the semaphore as it was placed.

The order of the Railroad Commission does not prescribe the distance from the track at which a semaphore or other structure shall be placed, but merely prescribes the minimum distance in such cases. Further, even if compliance with a statutory regulation be regarded as *prima facie* evidence of the exercise of due care, it is not conclusive of that point, and may be overcome by testimony to the contrary.

Appellant relies upon the case of *Southern Pacific Railroad Co. v. Berkshire*, 254 U. S., 415, 41 S. Ct., 162, 65 L. Ed., 335, to sustain its position. We have examined that case with care. While there are some points of similarity between the facts of that case and the facts of the case at bar, we think that they are so different as to render that case non-controlling in the present case. In the *Berkshire case*, an engineer was killed by being struck on the head by a mail crane while leaning out of the window of his cab. This crane had been erected in accordance with regulations of the Post Office Department. The Court distinguished between a postal crane case and "other cases where there is more or less choice as to position," and held that under the facts of that case to allow a verdict for the plaintiff would be to substitute sympathy for evidence, saying, however, that it was confining itself "to the case of postal cranes."

VI. The appellant says, in substance, by its sixth and twenty-eighth exceptions, that: "Under the evidence, decedent assumed, as a matter of law, any risk of injury from the position of the semaphore, and the Court erred in submitting that issue."

The appellant takes the position that, as Marshall was an experienced railroad man and had ridden by the semaphore

a great many times, as the testimony tended to show, and as there was a light at night on the semaphore, it was Marshall's duty to look for the semaphore light, and he assumed any risk of injury of being struck by the signal box. The appellant also contends that this case cannot be successfully, in this respect, distinguished from the *Berkshire case, supra;* that in that case the engineer had passed over the particular route for a number of years, had passed the postal crane many times, and it was presumed, as the Court said, that he knew that the crane was there.

We gather, however, from the statement contained in the *Berkshire case,* that the engineer was sitting in his seat at the window of the cab, where he had been riding over the same route for a number of years; that from this seat he could have seen the crane long before he reached it, and, as said by the Court, he was not "ignorant that such projection threatened danger, and knowing so much, he assumed the risk that obviously attended taking the chances of leaning well out from the train."

The facts of the present case, however, in essential respects, differ materially from the facts of the *Berkshire case.* The testimony in this case tends to show that the accident occurred about 3 o'clock in the morning; that, though there was a light on the semaphore, the night was dark and foggy. It does not appear that the decedent at the time the accident occurred, was on the top of the train, where he usually rode, but it might be inferred that he was riding on the ladder at the side of the car for the purpose of observing whether or not the defective condition of the brakes still existed. Under this state of facts, an issue was made that was properly submitted to the jury.

Our examination of the record in this case and of the law applicable to the questions raised by the appeal satisfies us that the appellant's grounds of alleged error are without merit.

All exceptions are overruled, and the judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : The cases cited below, in my opinion, abundantly demonstrate that Exceptions 14 and 15 should be sustained: *Chesapeake & Ohio R. Co. v. Kelly*, 241 U. S., 485, 36 S. Ct., 630, 60 L. Ed., 1117, L. R. A., 1917-F, 367; *L. & N. R. Co. v. Holloway*, 246 U. S., 525, 38 S. Ct., 379, 62 L. Ed., 867; *Chesapeake & O. R. Co. v. Gainey*, 241 U. S., 494, 36 S. Ct., 633, 60 L. Ed., 1124; *Johnson v. R. Co.*, 163 N. C., 431, 79 S. E., 690, Ann. Cas., 1915-B, 598; and that Exceptions 19, 20, and 22 should be sustained, *Boldt v. R. Co.*, 245 U. S., 441, 38 S. Ct., 139, 62 L. Ed., 385; *Seaboard Air Line R. v. Horton*, 233 U. S., 492, 34 S. Ct., 635, 58 L. Ed., 1062, L. R. A., 1915-C, 1, Ann. Cas., 1915-B, 475; *Chicago, R. I. & P. R. Co. v. Ward*, 252 U. S., 18, 40 S. Ct., 275, 64 L. Ed., 430; *Chesapeake & O. R. Co. v. De Atley*, 241 U. S., 310, 36 S. Ct., 564, 60 L. Ed., 1016.

I do not deem it necessary to consider the other exceptions. Let the exceptions referred to be incorporated in the report of the case.

ORDER ON MOTION OF DEFENDANT

*Per Curiam.* On trial of the above-mentioned case in the Court of Common Pleas for Charleston County, a verdict was found for the plaintiff and judgment duly entered thereon; upon appeal by the defendant to this Court, the judgment was affirmed. Thereafter the Supreme Court of the United States reversed the judgment of the State Supreme Court and remanded the case for a new trial; the mandate of the Court being as follows: "It is now here ordered and adjudged by this Court that the judgment of the said Supreme Court in this cause be, and the same is hereby, reversed with costs. * * * And it is further ordered that this cause shall be, and the same is hereby, re-

manded to the Supreme Court of the State of South Carolina for a new trial."

The defendant now moves for an order directing the entry of judgment in its favor, under Rule 27 of this Court. The plaintiff opposes the motion, and contends that under the judgment and mandate of the Supreme Court of the United States a new trial of the case should be had in the proper trial Court—that is, in the Court of Common Pleas for Charleston County—and that this Court should remand the case to that Court for such purpose.

The question is, therefore, What effect should be given by this Court to the mandate of the United States Supreme Court?

The language of the mandate is clear; the case was remanded for a new trial. This being the Court from which the case was removed by the writ, it was the only Court, under the law to which the cause could be remanded. Mason's U. S. Code, tit. 28, § 344 (28 USCA, § 344). But, as this is an appellate and not a trial Court, it is evident that the Supreme Court of the United States did not intend to direct that a new trial of the cause should be had in the State Supreme Court. Hence, under this view of the matter, the language of the mandate, that the case "is hereby remanded to the Supreme Court of the State of South Carolina for a new trial," can only mean that the case is remanded to this Court for a new trial, to be had in the proper trial Court. It follows, therefore, that it is made the duty of this Court, in order that effect may be given to the Court's mandate in the matter of a new trial, to remand the case to the trial Court.

The contention that the Supreme Court of the United States is without authority to order a new trial in the cause, and that its mandate in that respect is a nullity, will not be considered by this Court.

It is, therefore, ordered that the motion of the defendant be refused. Ordered, further, that the case be remanded to

the Court of Common Pleas for Charleston County for a new trial.

MR. JUSTICE COTHRAN (dissenting) : This is a motion by the defendant for an order directing the entry of judgment in favor of the defendant, under Rule 27, upon the ground that the Supreme Court of the United States (49 S. Ct., 35, 73 L. Ed. ——-) has reversed the judgment of this Court which sustained the judgment of the Court of Common Pleas for Charleston County in favor of the plaintiff; the defendant having appealed from said judgment upon the ground of error in not sustaining the motion for a directed verdict based upon the grounds : (1) That there was no evidence in the case tending to show negligence on the part of the defendant; and (2) that the evidence showed that the injury sustained by the intestate was due to the risks of his employment assumed by him.

The judgment of the United States Supreme Court was in these words : *"Per Curiam.* Reversed and remanded for a new trial on the authority of (1) *Chicago, M. & St. P. R. Co. v. Coogan,* 271 U. S., 472, 70 L. Ed., 1041, 46 S. Ct., 564; (2) *Southern P. Co. v. Berkshire,* 254 U. S., 415, 65 L. Ed., 335, 41 S. Ct., 162; *Chesapeake & Ohio R. Co. v. Leitch,* 276 U. S., 429, 72 L. Ed., 638, 48 S. Ct., 336; (3) *Gulf, C. & S. F. R. Co. v. Mosler,* 275 U. S., 133, 72 L. Ed., 200, 48 S. Ct., 49."

The mandate of the United States Supreme Court was in these words : "It is now here ordered and adjudged by this Court that the judgment of the said Supreme Court in this cause be, and the same is hereby, reversed with costs. * * * And it is further ordered that this cause shall be, and the same is hereby, remanded to the Supreme Court of the State of South Carolina for a new trial."

The motion is resisted by the plaintiff upon the ground that the judgment and mandate of the Supreme Court of the United States direct a new trial of the case in the Court of Common Pleas for Charleston County.

The Act of Congress (Section 344, Mason's U. S. Code, tit. 28) provides: "The Supreme Court may reverse, modify, or affirm the judgment or decree of such State Court, and may, in its discretion, award execution or remand the cause to the Court from which it was removed by the writ."

Under the Statute, I think that the Supreme Court of the United States was without authority to direct that a new trial be had in the Court of Common Pleas, and that so much of its judgment and mandate is a nullity if such was intended, manifestly an inadvertence. It follows that the effect of the judgment was simply a reversal of the judgment of the Supreme Court of South Carolina, the effect of which was to establish the status which would have been created by the rendition of what has been held to have been the proper judgment.

The result of this was necessarily to sustain the appeal of the defendant from the refusal of the Circuit Court to grant its motion for a directed verdict; and, under Rule 27 of this Court, the case should be remanded to the Circuit Court with direction to enter a verdict in favor of the defendant under said rule.

Under similar conditions in the *Coogan case,* the judgment of the Supreme Court of the United States was, "Judgment reversed"; in the *Missouri Pac. R. Co. v. Aeby Case,* 275 U. S., 426, 48 S. Ct., 177, 72 L. Ed., 351, the same; in the *Mosler Case,* 275 U. S., 133, 48 S. Ct., 49, 72 L. Ed., 200, "The judgment below is reversed, and the cause will be remanded to the Court * * * for further proceedings not inconsistent with this opinion"; in the *Leitch Case,* 276 U. S., 429, 48 S. Ct., 336, 72 L. Ed., 638, and in the *Berkshire Case,* 254 U. S., 415, 41 S. Ct., 162, 65 L. Ed., 335, "Judgment reversed"—all of which were in conformity with the statute above quoted.

Writ of error and not mandamus is the proper remedy to review the action of a State Court in giving effect to the mandate of the United States Supreme Court. *In re Blake,* 175 U. S., 114, 20 S. Ct., 42, 44 L. Ed., 94.