## SOUTHERN PACIFIC COMPANY *v.* BERKSHIRE, TEMPORARY ADMINISTRATOR AND PERSONAL REPRESENTATIVE OF LINDER.

CERTIORARI TO THE COURT OF CIVIL APPEALS, EIGHTH SUPREME JUDICIAL DISTRICT, OF THE STATE OF TEXAS.

No. 106. Submitted November 19, 1920.—Decided January 3, 1921.

1. The installation of railway mail cranes so close to the track that the arm of a crane when extended comes as near as 14 inches to the window of an engine cab, thus becoming a source of danger to the engineer while in performance of his duty, is not negligence upon the part of the railroad company as respects its employees, when such placing of the cranes is uniform along the railroad, and done by direction of the Post Office Department pursuant to a plan it found necessary in handling the mails. P. 417.
2. *Held*, that the question whether such installation was negligence should not have been submitted to the jury.
3. An experienced locomotive engineer who has operated many times over a railroad where mail cranes are set up close to the track, must be presumed to have known the danger of his being struck by their projecting arms when leaning from his cab window in discharge of his duty, and must be held, as a matter of law, to have assumed the risk. P. 418.

207 S. W. Rep. 323, reversed.

THE case is stated in the opinion.

*Mr. W. I. Gilbert* and *Mr. Wm. F. Herrin* for petitioner. *Mr. Guy V. Shoup* and *Mr. Henry H. Gogarty* were also on the briefs.

*Mr. C. B. Hudspeth* and *Mr. Geo. E. Wallace* for respondent. *Mr. A. J. Harper* was also on the brief.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action brought in a state court against the petitioner for causing the death of Linder, the plaintiff's

intestate.  At the trial the petitioner requested instruc-
tions that Linder assumed the risk of injury from the
cause complained of and that a verdict should be rendered
for the defendant.  These were refused, the defendant
saving its rights upon the record, and the plaintiff got
a verdict and judgment.  The Court of Civil Appeals
affirmed the judgment; the Supreme Court denied a
writ of error, and thereupon a writ of certiorari was
allowed by this Court upon the ground that an immunity
set up under the Federal Employers' Liability Act was
involved.

The facts so far as made definite by the evidence are
not in dispute.  Linder was employed by the defendant
as an engineer upon a train running from El Paso, Texas,
to Deming, New Mexico.  At Carney, in New Mexico,
he was found sitting on his engineer's seat, unconscious,
with his right arm and pretty nearly half of his body out-
side of the cab, leaning with the right side and arm over
the arm rest of the engine.  There was a cut about an
inch over the right ear.  He had been struck by the end
of a mail crane, or a mail sack that had been placed on
it to be picked up by a mail train following Linder's which
was an extra carrying soldiers.  In order to have uni-
formity the Post Office Department fixes the distance
of the cranes from the equipment, and the length of the
hooks, so that, in the language of a witness for the plain-
tiff, "the same hook that will take a sack off a crane in
Arizona or New Mexico will take it as it goes through
western Kansas."  The evidence was all to the effect that
this crane stood at the same distance as all the others
along the road.  The end of the crane when elevated was
not nearer to the train than fourteen inches, but might
have been found to be as near as that, and therefore near
enough to be capable of hitting a person leaning out of
the window, as indeed was shown by the event.

Linder had been upon this route for some years, had

passed over it many times and must be presumed to have known of the crane. It was visible from the engineer's seat half a mile ahead, through a front window. About a mile before reaching Carney Linder had noticed that the main driving pin on the engine was getting hot, had crept out upon the running board to see about it, and had returned. It may be supposed that at the time of the accident he was leaning out of the side window to look at it again and was acting in the course of his duty. The position in which his body was first seen and the place of the wound indicate that he was more than fourteen inches out from the engine's side.

In this case the question is not whether a reasonable insurance against such misfortunes should not be thrown upon the travelling public through the railroads, or whether it always is possible for a railroad employee to exercise what would be called due care for his own safety and to do what he is hired to do. The question is whether the railroad is liable under the statute according to the principles of the common law regarding tort. The first element in it is the standard of conduct to be laid down for the road. The standard concerns a permanent condition not only at this place, but at many places along the road and presumably at innumerable others on all the large railroads of the United States. There are no special circumstances to qualify this part of the question— which is whether or not it is consistent with the duty of a railroad to its employees to erect railroad cranes of which the end of the arm when in use is fourteen inches from the side of the train. The railroad is required and presumed to know its duty in the matter and it would seem that the Court ought to be equally well informed. It cannot be that the theory of the law requires it to be left to the uncertain judgment of a jury in every case. See *Southern Pacific Co.* v. *Pool,* 160 U. S. 438, 440.

It is impracticable to require railroads to have no

structures so near to their tracks as to endanger people who lean from the windows of the cars. Most passengers are familiar with cautions against putting out heads or arms. However it may be in other cases where there is more or less choice as to position, this is true as to the postal cranes. The farthest point at which a bag could be picked up is twenty-nine inches, and it requires a less distance than that to be sure of getting the bag. In short it would be impossible to use the contrivance with absolute certainty that no accident would happen if a man put his head out at the wrong moment. It equally is impossible to condemn railroads as wrongdoers simply for adopting the device with the conditions imposed by the Post Office Department. When a railroad is built it is practically certain that some deaths will ensue, but the builders are not murderers on that account when the foreseen comes to pass. On the common-law principles of tort the adoption of an improvement in the public interest does not throw the risk of all incidental damage upon those who adopted it, however fair it may be to put the expenses of insurance upon those who use it. It is going very far to leave it open to a jury to attach liability in tort to a system by which the ends of the arms of postal cranes come to fourteen inches from the car.

But further, we must take it, as we have said, that Linder perfectly well knew of the existence of the crane where it stood, and could have seen it from his seat had he looked, long before he reached it. He entered the employment of the railroad when it had this appliance manifest in its place. The only element of danger that he may not have appreciated was the precise distance which the point of the crane would reach. But an experienced railroad man cannot be supposed to have been ignorant that such a projection threatened danger and, knowing so much, he assumed the risk that obviously would attend taking the chances of leaning well out from

the train.   As we have said, the only possib᷑ ᷑ inference on the uncontradicted evidence of the plaintiff's witnesses was that he leaned out considerably more than fourteen inches as shown by the position of his body and the place of the cut on his head.   The probability is that the distance of the crane was somewhat greater than the minimum that we have assumed, but that we lay on one side. Confining ourselves to the case of postal cranes we are of opinion that to allow the jury to find a verdict for the plaintiff was to allow them to substitute sympathy for evidence and to impose a standard of conduct that had no warrant in the common law.   *Butler* v. *Frazee*, 211 U. S. 459, 465–467.   *Kenney* v. *Meddaugh*, 118 Fed. Rep. 209.

*Judgment reversed.*

MR. JUSTICE CLARKE, with whom concurred MR. JUSTICE DAY and MR. JUSTICE PITNEY, dissenting.

Engineer Linder, when leaning out of his cab, in the discharge of his duty to see the condition of a "hot driving pin," was struck on the head and killed by the end of a horizontally extended arm of a mail crane.   There is no question of contributory negligence in the case,—the judgment could not be reversed for that, under the Federal Employers' Liability Act.   The negligence of the railroad company is palpable but, nevertheless, the finding of a properly instructed jury and of two state courts, is here reversed because this court concludes, as a matter of fact, that the mail crane arm was such an obvious and conspicuous source of danger to Linder that he must be held, as a matter of law, to have assumed the danger from it, by continuing in the service of the company.

The record shows: that Linder was a freight engineer, and as such had nothing to do with mail cranes and had neither occasion nor opportunity, except very rarely, to see what, if any, danger the crane arms could be to him when in the discharge of his duties, for, during the two

years next before his death, he had made but twelve trips on passenger trains, only three of which were on trains which "picked up" mail from cranes; that when mail cranes are not in use the arms hang vertically beside the supporting post, which is three feet eight inches from the side of an engine, and obviously in such position they are not a source of danger to train men; that, on the line involved, the arms of cranes were extended horizontally toward the track, so as to be a source of danger to engineers, only two or three times a day, at widely separated intervals, when they were used to support a mail bag for ten minutes before the arrival of each mail train,—a fraction of an hour in twenty-four; and that Linder, when leaning out of his cab to see the condition of a hot driving pin, was struck an inch above his ear, so that if the arm had been three or four inches farther from the track he would not have been injured.

The record does not show: that government requirements for mail cranes require them to be as close to the track as this one was. On the contrary, the only evidence to the point is that of an employee in the government mail service, who testified, that the hooks on mail cars are adjusted to catch mail bags if within twenty-nine inches of their sides, that allowing for the swaying of the cars, they will catch them if twenty-six inches away, and that the sides of the cars are "flush" with the sides of engine cabs. The point of the crane arm which killed Linder "was about fourteen inches from the side of the cab," but on this evidence it could have been placed twenty-six inches away, where it would not have been a source of danger to him.

Although the civil engineer who had charge of the cranes on the division was a witness for the company he was not asked the distance of the crane causing the injury, or of any other crane, from the track—a suspicious circumstance—and that other cranes were at the same dis-

tance as the one which caused the injury can only be inferred from inadequate statements of witnesses who had never made any measurements and who gave the merest impressions with respect to them. Where, as here, three or four inches is a matter of life and death, random estimates are valueless and should not be accepted, especially when the company certainly had perfectly definite information, which was suppressed. A hard and fast assumption of law should not be based on findings of fact by this court derived from such evidence.

There is no description whatever in the record of the length, dimensions or appearance of the arms of the crane which caused the death of Linder. How, on such evidence, can it be justly stated, that such crane arm was so permanent and conspicuous a source of danger that, as a matter of law, Linder, a freight engineer, usually running past it at high speed when its arms were down, should be charged with knowing and appreciating and assuming the risk!

It has been a criminal offense in Ohio for twenty years to maintain mail cranes nearer than eighteen inches to the nearest point of contact with the widest locomotive on the road erecting such cranes, 97 O. L. 274, and there are similar statutes in other States. If the point of the crane arm here involved had been eighteen inches, four inches farther than it was, from the engine, Linder would not have been injured.

There is no evidence whatever that Linder actually knew that the crane arm extended close enough to the track to cause him injury, and the latest formulation by this court of the rule applicable to the case is: "In order to charge an employé with the assumption of a risk attributable to a defect due to the employer's negligence, [as this defect was], it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew that it endangered his safety; or else

such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it." *Gila Valley, Globe & Northern Ry. Co.* v. *Hall*, 232 U. S. 94, 102.

Earlier expressions of the rule are that the danger must be "plainly observable" (*Texas & Pacific Ry. Co.* v. *Archibald*, 170 U. S. 665, 672; *Choctaw, Oklahoma & Gulf R. R. Co.* v. *McDade*, 191 U. S. 64, 68), or "so patent as to be readily observable" (*Texas & Pacific Ry. Co.* v. *Swearingen*, 196 U. S. 51, 62).

It is "a strong thing" to hold, on the indefinite evidence in this record, which I have attempted accurately to detail, that a mail crane arm is such a permanent and conspicuous source of danger to a freight engineer as to bring this case within the scope of the decisions cited, and it is a yet stronger thing to reverse the finding of a jury properly instructed, and the judgments, on a question of fact, of two state courts, which the record shows acted with full appreciation of, and with a desire to follow, the decisions of this court with respect to assumption of risk.

In practice certainly, and I think in theory, the decision of the court in this case will introduce a new and unfortunate standard into the law of assumption of risk, which will confuse the doctrine as it has been worked out in the cases cited, will render railway companies careless in placing obstructions near to their tracks, and will result in the injury and death of many innocent and careful men, if the effect of it is not promptly corrected by state and national statutes, and therefore I cannot consent to join in it.