### MISSOURI PAC. R. CO. v. STEEN.*
### (No. 3275.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 10, 1926. Rehearing Denied Nov. 18, 1926.

**1. Master and servant ⚖➟113(3)—Railroad, though required to construct viaduct, held liable for switchman's injuries, caused by location of tracks and failure to maintain telltales.**

Where legislative act required railroad company to build viaduct over its tracks, fact that it had no discretion in formulating plans or prescribing details of construction *held* no defense to negligence in location and maintenance seven years later of new railroad tracks beneath, and for failure to erect and maintain telltale across track, as charged by administratrix of switchman's estate, whose death was caused by colliding with viaduct while on top of box car.

**2. Master and servant ⚖➟288(4)—Switchman's knowledge of danger from viaduct held for jury.**

Whether switchman, who was injured by colliding with viaduct over tracks while riding on top of moving train, knew of proximity of viaduct to top of car, it appearing that he had been an employee of railroad for only three days and had never worked in that particular vicinity before, and assumed risk, *held* for jury

**3. Master and servant ⚖➟217(1)—Employee assumes only risks known or plainly observable.**

An employee assumes the risk of injury of his employment only when those things which are liable to cause injury are known or plainly observable to him.

**4. Master and servant ⚖➟270(11)—Evidence of custom of railroads to use telltale to warn trainmen of overhead bridges held admissible.**

That administratrix of estate of husband, who was killed by colliding with viaduct over railroad tracks while working on top of train, was permitted to prove telltale was device commonly used by other railroads to warn trainmen of proximity of low overhead bridges, *held* not error.

**5. Appeal and error ⚖➟882(8)—Where appellant has elicited certain testimony, he cannot object because similar testimony has been brought out by appellee.**

Where appellant elicited testimony of removal of telltale over its railroad tracks prior to employment of switchman, who was killed by colliding with low viaduct, *held*, he could not object to similar testimony brought out by appellee.

**6. Master and servant ⚖➟113(3)—Railroad, failing to maintain telltale on low viaduct over its tracks, held negligent.**

Where it was custom of railroad companies to maintain telltale warning devices on both sides of low bridges and viaducts over railroad tracks, railroad company, which discontinued maintenance of telltale on one side of viaduct, causing death of switchman, *held* negligent.

**7. Jury ⚖➟149—That juror, peremptorily challenged by plaintiff, was through oversight retained, held no ground for discharge of jury on defendant's motion.**

Motion for discharge of jury by defendant, because of retention through oversight of juror who had been peremptorily challenged by plaintiff, who later waived objection, the juror being legally drawn and summoned and qualified to serve, and it appearing he was not objectionable to defendant railroad, *held* properly overruled.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by Mrs. Birdie Steen, as administratrix of the estate of C. L. Steen, deceased, against the Missouri Pacific Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Leake, Henry, Wozencraft & Frank, of Dallas, for appellant.

Edwards & Hughes, of Tyler, and E. E. Weaver, of Texarkana, for appellee.

HODGES, J. This suit was filed by Mrs. Birdie Steen, as the administratrix of the estate of her deceased husband, C. L. Steen,

to recover damages resulting from his death. Steen was killed in January, 1925, while in the service of the appellant as a switchman. He had been employed a day or two before as an extra man to work in the appellant's yards at Texarkana. In those yards were a large number of railway tracks, which are crossed by two viaducts—one on the Texas side of the state line, and the other on the Arkansas side. The distance between the viaducts is something less than a mile. The immediate cause of Steen's death was an unexpected contact with the Arkansas viaduct, while he was riding on top of a box car. He was attached to a switching crew working in that portion of the yard crossed by the Arkansas viaduct. The injury occurred while the crew was moving some cars on what is called in the testimony the "Land-Mill track." That switch track passed under the north end of the viaduct at a point where the overhead structure was too low to clear a man standing on top of a freight car. Previous to the accident Steen had been engaged with the crew in switching cars on tracks south of the Land-Mill track, and at points where the viaduct was high enough to clear a man standing on the top of the tallest box car. He then crossed over to the north side of the yard, to the Land-Mill track, a short distance west of the viaduct. It was his duty to go on top and release the brakes on the cars to be moved. While the cars were moving east and he was walking west, with his back to the viaduct, releasing brakes, he came in contact with the lower edge of the viaduct and was knocked off the car. He fell between the cars, and was run over and injured, so that he died in a few hours thereafter. He left a widow and two small children, who are the parties interested in this suit.

In her petition the appellee alleged negligence on the part of the appellant: (1) In the manner of maintaining the track under the viaduct at a level which did not permit the passage of a man standing on top of a box car; (2) in failing to provide a telltale, or warning device, across the Land-Mill track west of the viaduct, in order to notify trainmen of the proximity of danger; (3) in the manner in which the crossbeams under the viaduct were placed and maintained; (4) in failing to have the switch engine on that occasion equipped with brakes in good condition. Other acts of negligence were charged, but the above are, in substance, those which were submitted by the court as a basis of liability. In addition to exceptions and a general denial, the appellant pleaded assumed risk and contributory negligence.

In response to special interrogatories the jury found, in substance: (1) That the level and position in which the Land-Mill track was maintained created an extrahazardous and unsafe situation for employees in the performance of their duties; that this was negligence and a proximate cause of the injury. (2) That the failure of the appellant to provide and maintain a telltale across the Land-Mill track near the west side of the viaduct was negligence, and that such negligence was a proximate cause of the injury. (3) That the position in which the floor beams of the viaduct were maintained over the Land-Mill track created a dangerous situation, and the railway company was guilty of negligence in so maintaining the beams, and such negligence was a proximate cause of the injury. (4) That the switch engine used on that occasion was not equipped with proper brakes, and that this lack of equipment was a proximate cause of the injury. (5) That the deceased was not guilty of contributory negligence, and did not assume the risk of being injured by the conditions under which he worked. The jury found that the appellee was entitled to recover, and assessed her total damages at $30,000, which was apportioned as follows: To the widow $18,500, and to each of the children $5,750; $2,500 of that sum was allowed as compensation for the mental and physical suffering endured by Steen between the time he was injured and his death.

The record in this appeal is large, and the assignments of error are numerous. To discuss each proposition relied on for a reversal would extend this opinion beyond reasonable limits. While each assignment has been examined and considered, we shall here notice only those which present the more important questions for review.

Among the special charges requested by the appellant was one directing a verdict for the defendant, on the ground that the evidence conclusively disclosed a situation in which Steen had assumed the risk of injury resulting from the conditions under which he was working. It is contended, in effect, that, even if the viaduct was too low, and the crossbeams supporting the floor were improperly arranged, and no telltale across that track had been provided, yet those conditions were so obvious to Steen that he should be charged as a matter of law with a knowledge of the existence and the dangers they presented. It is further insisted, in support of the special charge above referred to, that the proof showed without dispute that this viaduct was constructed in obedience to and in compliance with a statute passed by the Arkansas Legislature, and the danger thereby created was a normal incident to Steen's employment and the service he was performing.

[1] Beginning with the proposition last above stated, that the viaduct was built in obedience to and in compliance with the statute, the facts assumed by appellant are not fully supported by the record. The proof showed that the structure was erected about 1908, was several hundred feet long, and furnished an overhead crossing above a number

of railroad tracks in the yards at that place. Some time prior to its construction the Arkansas Legislature passed an act which required the appellant—

"to build a viaduct, or elevated steel and wooden bridge, not less than twenty-four feet wide and well ballasted, for the use of footmen or pedestrians and vehicles, over and across the yard and yards of the railroad company where said yards and tracks are crossed by College street, and to extend out in said College street with its approaches a sufficient distance at each end to make the incline accessible for pedestrians and vehicles."

It was further provided that:

"The said St. Louis, Iron Mountain & Southern Railway Company shall cause to be furnished by a competent engineer plans and specifications for the said bridge or viaduct, designating the kind of material to be used and the character of the work, and said engineer shall have the authority to reject any material or work that is not satisfactory and shall report the same when the bridge or viaduct has been completed to the city council of the city of Texarkana, Arkansas, for its approval or rejection, who shall examine the report and have power to accept or reject the bridge or viaduct, unless the same shall have been built according to the plans and specifications furnished by said engineer, and in case it shall be rejected by council, then the said railroad company shall make such changes and alterations as required by said engineer, to make the bridges or viaduct conform to the specifications made by the said engineer."

It is not shown that the city attempted to exercise any control over the construction, or the manner in which the appellant should arrange its tracks on the ground below. It thus appears that all of the details which could in any way affect the safety of railway employees operating trains under the viaduct were left to the judgment of the appellant, or the engineer whom it selected to prepare the plans and specifications. But, assuming it to be true, as contended by the appellant, that it had no discretion in formulating the plans, or in prescribing the details according to which the structure should be built, that fact furnishes no defense to the charge of negligence in the location and maintenance of the Land-Mill track, on which the injury occurred, and the failure to erect and maintain a telltale across that track. The evidence shows that, when completed, the main, or horizontal, spans of the viaduct were high enough to clear a man standing on top of the tallest box car, and that on none of the tracks then laid, or in use, was the viaduct so low as to endanger employees so using the cars. That situation continued until about 1915, seven years after the viaduct was completed, when the appellant, for the accommodation of some local shippers, constructed the Land-Mill track. It appears that this track was located at the north end of the viaduct, and passed under one of the approach spans

which was inclined to enable the traveling public to use the bridge. The track was laid on a level with the surface of the ground, and this left too little space above to clear a man standing on the top of an ordinary box car. There was evidence tending to show that this track might have been built on a lower level, without interfering with the possibility of proper drainage, which would have allowed sufficient space above to eliminate the obstruction.

The facts of this case are wholly unlike those involved in Southern Pacific Ry. Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335, which is relied on by the appellant as authorizing the peremptory charge requested. In that case an engineer, while leaning out of the window of his cab, was struck by a mail crane, which had been erected near the track. It was held on appeal that, under the circumstances detailed by the evidence he assumed the risk arising from the proximity of the crane. In stating the grounds of its holding the court emphasized the fact that the engineer was an experienced employee and had been running on that road for some time. The crane was directly in the line of his vision when looking ahead, and was built in accordance with regulations of the Post Office Department. The opinion of the majority concluded with this significant expression:

"Confining ourselves to the case of postal cranes, we are of opinion that to allow the jury to find a verdict for the plaintiff was to allow them to substitute sympathy for evidence and to impose a standard of conduct that had no warrant in the common law."

No such situation is before us here.

[2, 3] Appellant also contends that a verdict in its favor should have been directed, because the low elevation of the viaduct and the fact that it was not high enough to clear a man riding on top of a box car were so obvious to the deceased that he should be charged with a knowledge of that situation and the assumption of the risk. The evidence tended to show that, during the brief time the deceased had been employed in the yards at that place, he had worked with trains passing under other portions of the viaduct where the elevation was high enough to clear a man riding on top of any box car. When required to go over to the Land-Mill track for the first time, he walked to a point some distance west of the viaduct and mounted the cars for the purpose of releasing the brakes. That, according to the evidence, was his first service on the Land-Mill track, and the first time he had occasion to notice those surroundings. When the train on which he was standing moved toward the viaduct, he had his back turned in that direction and was apparently busy releasing brakes. Immediately after he was knocked to the ground he stated to a fellow-employé that he did not

know the viaduct was so low. It is manifest from that expression, made so soon after the injury, that he was ignorant of the real situation. It was further shown that no telltale was maintained across the track on that side of the viaduct. The only standing notice of the danger was a painted signboard near the viaduct, which might have been overlooked or not read.

The evidence, we think, made an issue for the jury, and the court correctly refused the peremptory instruction requested by the appellant. C., O. & G. R. R. Co. v. McDade, 191 U. S. 65, 24 S. Ct. 24, 48 L. Ed. 97; Gila Valley, G. & N. R. R. Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 L. Ed. 522; St. L. S. W. Ry. Co. v. Johnson (Tex. Com. App.) 268 S. W. 926; Railway Co. v. Hannig, 91 Tex. 347, 43 S. W. 508. The jury found, under evidence amply sufficient, that the manner in which the Land-Mill track was laid out and maintained for operation created an extrahazardous situation, and that this was negligence on the part of the appellant. From that and other findings it follows that the danger to which the deceased was exposed resulted from the negligence of his employer in failing to provide a reasonably safe place in which to perform his services. Under the rule announced in the above-cited cases, and many others of a similar nature, the court correctly submitted the issue of assumed risk. His explanatory instructions properly stated the conditions under which the servant assumes a risk resulting from the negligence of the master. There was no occasion to give those requested by the appellant, even if they were correct.

[4, 5] The jury also found that the appellant's failure to provide and maintain a telltale or warning device over the Land-Mill track on the west side of the viaduct was negligence and a proximate cause of the injury. Appellant's own witnesses, on direct examination, testified that at the time Steen was employed there was a telltale over the Land-Mill track on the east side of the viaduct, but none on the west side. There had been one, they stated, on the west side, but some weeks prior to Steen's employment it had been removed, to permit some local shippers to use machinery in unloading cars on a spur track. This testimony having been elicited by the appellant, there is no merit in its objection to similar testimony brought out by the appellee from other witnesses.

Over the appellant's objection the appellee was permitted to prove that the telltale was a device commonly used by other railroads to warn trainmen of the proximity of low overhead bridges. In this there was no error. Railway Co. v. Harriett, 80 Tex. 73, 15 S. W. 556; Railway Co. v. Reed, 88 Tex. 449, 31 S. W. 1058. The witnesses whose testimony was objected to stated, in substance, that telltales were in common use among railroads as a means of warning employees against low overhead bridges and similar dangers.

[6] Even if it should be said that under the facts of this case the appellant could not legally be held liable because of the location and maintenance of the Land-Mill track in the manner alleged and shown, there is much reason for holding it liable for negligence in failing to provide a telltale across the track on the west side of the viaduct. Such a device serves two purposes—one to notify the employee that he is to pass under a low bridge; the other to warn him of the proximity of the bridge. It is by no means improbable that a trainman, with full knowledge that low bridges are on his line, might become so engrossed with his duties as to be oblivious of his proximity to danger. These warning devices are simple in structure, and, according to the evidence, were in common use by many railroads, including the appellant.

In view of that prevailing custom and the fact that telltales had been erected across this track on both sides of the viaduct, there is ample basis for a finding that the appellant was negligent in discontinuing the one on the west side. All other charges of culpable negligence might be disregarded, and the affirmance of the judgment rested upon that ground alone. For that reason we shall not here discuss the remaining issues submitted and passed upon by the jury.

Under appropriate instructions the jury acquitted the deceased of contributory negligence. A contrary finding would have been opposed to the great weight of the evidence.

[7] There is, however, one other assignment which should be noticed in the disposition of this appeal. On the second day of the trial it was discovered that one of the jurors by the name of Gray, who had been peremptorily challenged by the appellee, was among those who were impaneled and sworn and was sitting as one of the 12 trying the case. Gray's name was on the list prepared by the clerk and delivered to the attorneys. Each side exhausted its number of peremptory challenges. Gray was among those rejected by the appellee, and not one of those rejected by the appellant. His continued presence on the panel is accounted for by the fact that the trial judge and the attorneys did not know him by name. On the second day of the trial, after much testimony had been produced, Gray's presence on the jury was discovered, and the fact made known to the attorneys. Counsel for the appellee waived their objection to Gray, and expressed a willingness to proceed with him as a member of the jury. Counsel for the appellant objected to further proceeding with Gray on the jury, and filed a motion asking that the jury be discharged. The motion was overruled and the trial proceeded with Gray as one of the jurors in the case.

There is nothing in the record to indicate that Gray was legally disqualified to serve as a juror, or that he was not properly sworn, or that he was for any reason personally objectionable to the appellant; nor is there any contention that by his retention as a juror the appellant ' was deprived of any legal right which it would have exercised in the selection of the jury, or that it sustained any injury by Gray's presence on the jury. He was, so far as the record shows, impartial and legally qualified to serve as a juror, and was among the number legally drawn and summoned as such. He had been indirectly accepted by the appellant. The authorities cited by the appellant in support of this assignment of error do not support the proposition upon which it relies. The objection, we think, is more technical than meritorious, and the assignment is overruled.

The remaining assignments of error will be overruled without discussion, and the judgment affirmed.