## FORT WORTH & D. C. RY. CO. v. BELL.
### (No. 12048.)

Court of Civil Appeals of Texas. Fort Worth.
Feb. 2, 1929.

Rehearing Denied March 2, 1929.

Thompson & Barwise, of Fort Worth, Donald & Donald, of Bowie, and F. B. Walker, of Fort Worth, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, and T. H. Yarbrough, of Nocona, for appellee.

DUNKLIN, J. On the night of February 8, 1926, in the city of Bowie, Grady B. Bell attempted to pass between two box cars of a freight train operated by the Fort Worth & Denver City Railway Company, and while so doing he fell, and one of his arms was so badly crushed under the wheels of the train that it had to be amputated just below the elbow.

He instituted this suit against the railway company for damages for that injury, and this appeal has been prosecuted by the de-

fendant company from a judgment in his favor in the sum of $10,000.

The case was tried before a jury, to whom was submitted special issues. The issues submitted, with the findings of the jury thereon, were, in substance, as follows: (1) The accident happened at a public street crossing in the city of Bowie just south of defendant's depot. (2) Immediately prior to the accident and prior to the time the train was set in motion, the defendant company willfully obstructed the public street crossing where the accident occurred for a length of time in excess of five minutes; and its act in so doing was the proximate cause of plaintiff's injury. (3) Defendant's employés were "negligent in the matter of time that its train obstructed" the public street crossing in controversy immediately prior to the accident; and such negligence was the proximate cause of plaintiff's injury. (4) The defendant was "negligent in the matter of giving adequate warning and notice by the blowing of the whistle or the ringing of the bell that the train was going to move forward," which negligence was the proximate cause of plaintiff's injury. (5) The defendant was not guilty of negligence in failing to have a watchman or flagman at the crossing. (6) The plaintiff was not guilty of negligence, proximately contributing to his injury, in attempting to pass between two of defendant's freight cars at the time and place and in the manner he attempted to pass between the same on the occasion of his injury. (7) Plaintiff made no inquiry of the crew in charge of the train as to whether it would be safe for him to pass between the cars; but his failure to make such inquiry was not a failure to exercise ordinary care for his safety. (8) As a result of his injury, plaintiff sustained damages in the sum of $10,000.

The issues determined by the jury were duly presented in the pleadings of the parties.

Under appropriate assignments of error, it is insisted by appellant that the evidence introduced showed conclusively, as a matter of law, that plaintiff was guilty of negligence in attempting to cross the railway track, which was the sole cause, or at least a proximately contributing cause of his injury, by passing between two box cars connected together and constituting parts of a connected freight train attached to a live engine which, at the time, was in the act of starting on its journey.

The record shows without dispute that on the night of the accident plaintiff had gone to Fort Worth on a passenger train, and alighted therefrom at defendant's depot in the town of Bowie shortly after 9 o'clock at night. After his arrival he went to a garage and got his auto, and went to the home of a Mr. Sprowles to see him on a matter of business, after which he proceeded on his way to his home. At that time defendant's freight train was on a siding track, having come from Amarillo, and was headed south towards Fort Worth. That siding divides the business section of the city of Bowie from the residence section, and it extends in a northerly and southerly direction; the business district being on the east side of the track, and the residence section, where plaintiff intended to go, being on the west side. There are four public street crossings on this siding, all within the boundaries of the city of Bowie; beginning from the north, they are designated as the stock pen crossing, the Smokey or Smythe street crossing, the depot crossing, and the cotton yard crossing.

We quote the following from plaintiff's testimony, which is copied in his brief to refute appellant's contention that, as a matter of law, he was guilty of negligence proximately contributing to his injury:

"When I got in my car I drove to the crossing on Smokey or Smythe Street. That street leads from the west side of the business section of Bowie. It was the principal traveled street of the town at that time. I was going to Harry Sprowles. * * * When I drove up to the track * * * a freight train was standing on the track blocking my way there. * * * I turned and drove west to the stock pen crossing, where I found the crossing blocked by the same freight on the same siding. I then turned and drove back to the Electric Café and got me a drink of water. I just walked in the café and out and then drove to the depot. I don't know the name of that street, but it leads off one side of the square and goes right in the main building section. When I got to that crossing, it was blocked by the same freight train. When I found it was blocked by the same freight train, * * * then I turned around and went back by the underpass, which is due east.

"I went to Harry Sprowles' house but he wasn't at home, and I sat there and waited for him thirty or forty minutes, and then started back to town. I then drove straight to the stock pen crossing. * * * When I got there I found it blocked by the same freight train. The rear end of the train was somewhere about three or four or five car lengths behind this stock pen crossing when I came up and found it blocked—I never counted them but that is my estimate. After I came back and found the stock pen crossing blocked, I then drove to Smokey Street. I was attempting to pass through and get back to the city—back to the business section. When I got there, I found the crossing blocked by the same freight train on the same siding, and then I passed up at the next crossing at the depot and went right on by the depot crossing and went to the next crossing at the cotton yards and attempted to cross there. I found it blocked by the same freight train on the same siding.

"I was nearer the engine then than I had previously been, and the engine was to my

right. I could see the engine. The engine was just sitting still, wasn't moving. There was no sign of life. It was just standing there and appeared to be dead.

"I did not hear any bell ringing or a whistle blown, and did not see any smoke. I then started to back up and turn around and I killed the engine of my car. I tried to start it until I run the batteries down, and then I got out and cranked it for some little bit. * * * I worked with my car until I considered it hopeless so far as getting my engine started again.

"When I found my car was dead, I decided to go to town to get someone to come and get my car. From this crossing there at the cotton yard I walked back toward the end of the train, just one block—that was the main street that I had just passed up previously at the depot, and it was still blocked.

"It was something like an hour from the time I first found it blocked until I came up to this main crossing and found it blocked again.

"When I got there I looked both ways, and there was so sign of life. I saw nothing. No noise or nothing. Everything was still. I can hear good. * * * I could have heard the bell or whistle if it had sounded.

"I then reached the point where I was going, and at that time where I had stopped and started to go through, they have a flower bed of some kind—the point where I attempted to pass was right at the point where the sidewalk would project across the track if there had been a sidewalk there.

"After I looked in every direction and saw no sign of life and heard no sound of any kind, I believed I could go through there safely. .

"It was light at the point where I attempted to pass. In attempting to pass I caught hold of the step on one end of the car and the step on the other, on each end of the cars. * * * When I swung myself up those two steps were down something like that high to me. I put my foot on a sill at the end of each car and was holding to a step, and I was leaning against the end of a car, and of course I was aiming to go on through to the drawhead and out—when I got to the drawhead I could jump on out, and right there at these sills is as far as I ever got.

"I don't know a thing in the world about what happened at that time, only I know it jerked, and that is the last I knew.

"Prior to that there was no whistle blown or bell rung. I did not see any brakeman waving a lantern before I got up there. I did not see any sign of life about the train. It would have taken me something between five and ten seconds to have gone on through."

Some of the testimony quoted above is also copied in appellant's brief, and in addition thereto the following is set out in its brief as supporting the assignment now under discussion:

"I don't know how long it took me to go from Sprowles' house and make those crossings up until the time I killed my car—I don't know how to put it plain, but I have an idea driving about seven blocks it ought to take a man five minutes working with the car. I did not see any member of the train crew during the time I was there working with the car. I saw the engine down there and saw that it was headed towards Fort Worth; I seen it the first I drove up to it. It wasn't making a bit of noise. I never noticed any steam, but there might have been. If it was making any noise it wasn't enough to attract my attention. I know how an engine sounds when it is fired up, when they are kind of blowing off, but I didn't hear anything like that. I wasn't paying any attention to that. I did not see any of the train crew around there. I was looking for someone, but I never seen a soul. There was a light in the cab of the engine, but I never saw any member of the train crew in the cab, not a soul. I don't tell the jury there wasn't anybody on the engine, but I say I never seen them. There was no men around there, whether connected with the train or not, that I saw. * * *

"I have ridden freight trains in shipping cattle and have ridden back in the caboose, and I know that in the handling of any freight train there is more or less jar in the handling of it. I knew if that locomotive started up there that I was in a pretty bad shape. I knew before I got in there that I was in a dangerous place if that locomotive started. I knew that by having been around them and by common sense. I knew that when I made my move to throw myself up in there that night. When I did that I knew that every car was attached to a locomotive down at the other end."

According to the testimony of the operatives of the train, including the engineer, brakeman, and conductor, the train was cut and openings left at the several crossings which plaintiff testified were blocked prior to the time of his injury, and those openings were not closed until the train was ready to start on its journey southward, and the couplings were then made, one after another in consecutive order, and the times consumed in making those three couplings aggregated only a few minutes. They further testified that before the train started, the brakemen signaled the engineer with their lanterns, and that as soon as those signals were given two blasts of the whistle were sounded before the train was put in motion. However, in the determination of merits of the assignment now under discussion, the testimony of plaintiff must be looked to alone, to the exclusion of all testimony offered by the defendant bearing upon the issue of plaintiff's contributory negligence.

■ Many authorities are cited in the briefs of counsel for the parties to this appeal to support their respective contentions. We shall not undertake a review of all those authorities, since the facts of each case necessarily differ from those of every other case. In many of the decisions cited and referred to in which damages were claimed for injuries to persons at railroad crossings, or while attempting to pass between two cars, those injured were held to be guilty of contributory negligence barring a recovery, as a conclusion of law. In many other decisions cited and referred to, rulings were made that whether or not the plaintiff was guilty of negligence proximately contributing to his injury was an issue of fact to be determined, not by the court, as a conclusion of law, but by the jury from all the facts and circumstances in evidence. In every such case, by reason of the varying facts involved, necessarily the question must be determined according to a certain fixed standard or test which is to be applied to the facts in each case. The test to be applied has been well expressed by Chief Justice Conner, of this court, in Weatherford, M. W. & N. W. Ry. Co. v. Thomas, 175 S. W. 822, as follows: "It will be sufficient to here say that we think it will be found, generally speaking, that in those cases where the courts have declared a party guilty of negligence as a matter of law in attempting to cross a railway track between cars to which is attached a live engine, there is an absence of justifying or excusing circumstances."

In the opinion in that case the decision of our Supreme Court in Choate v. S. A. & A. P. Ry. Co., 90 Tex. 88, 36 S. W. 247, 37 S. W. 319, is cited with quotation therefrom, to the effect that to authorize the court to say, as a conclusion of law, that plaintiff has been guilty of contributory negligence barring a recovery by him for injuries he has received at the hands of another, the evidence must be of such a character as that there is no room for ordinary minds to reach any other conclusion.

In G., H. & S. A. Ry. Co. v. Price, 240 S. W. 524, by the Commission of Appeals, a judgment in favor of Mrs. M. S. Price, for damages sustained by reason of the death of her husband, who was killed by one of the trains of the railway company at a public crossing, was reversed and judgment was rendered in favor of the railway company. The opinion in that case contains an extended review of the many decisions of this state in which different conclusions were reached upon the same issue, but upon different facts, of course. The following excerpt from the opinion in that case embodies the test applied in the determination of the question: "The uncontradicted evidence and the specific findings of the jury present a clear case of a pedestrian stepping in front of a slowly moving train under *circumstances which present no ex-*

*cuse for his not discovering it.*" (Italics ours.)

G., C. & S. F. Ry. Co. v. Gaddis, 208 S. W. 895, by the Commission of Appeals, also cited in the Price Case, supra, was a suit to recover for the death of Jack Gaddis, who was killed by a passenger train at a public crossing in the city of Fort Worth. The judgment in favor of plaintiff was reversed and judgment was rendered in favor of the railway company by the Supreme Court in that case, upon the conclusion reached that the negligence of the deceased was conclusively established as a matter of law. In that case the test to be applied in such cases is stated as follows: "Where no care whatever has been exercised, our courts uniformly hold that contributory negligence exists as a matter of law, and recovery is denied."

The test announced in Sanches v. S. A. & A. P. Ry. Co., 88 Tex. 117, 30 S. W. 431, also referred to in the Price Case, is embodied in the following quotation from the opinion: "Ordinarily, negligence is a fact to be found or inferred from the testimony; but where from the testimony on the issue of negligence no inference but negligence can be drawn, it becomes a question of law, and the court may instruct the jury that negligence has been established."

It is apparent that the same test was applied in all of those decisions but expressed in different language; and we know of no authorities to the contrary.

Necessarily, the test so announced must be applied to the facts of this case and must be our sole guide in the determination of the issue now under discussion. As shown above, plaintiff testified, in part, as follows: "I knew if that locomotive started up there that I was in a pretty bad shape. I knew before I got in there that I was in a dangerous place if that locomotive started. I knew that by having been around them and by common sense. I knew that when I made my move to throw myself up in there that night. When I did that I knew that every car was attached to a locomotive down at the other end."

■■ He further testified that he had seen a light in the cab of the engine prior to his attempt to cross. The only excuse or reason offered by him for his attempt to pass between the cars was that he looked up and down the track and saw none of the trainmen, did not see the engineer in his cab, heard no whistle from the engine, and heard no hissing of steam therefrom, although he did not pay any attention to that matter, and concluded that the train was dead. But the fact that the engine was emitting steam was conclusively shown by the start of the train just as plaintiff threw himself between the cars; and that fact being open and easily ascertainable had he looked to discover whether the engine was in fact dead, he was chargeable with knowledge

that the train was then prepared to move; and that it was more likely to move at any time if it had then been standing for about one hour, as he testified. The facts so testified to by him cannot reasonably be construed as amounting to anything more than a mere scintilla of proof, which, tested by common experience of men having due regard for their personal safety, was so lacking in probative force as to be insufficient to furnish a reasonable excuse, prima facie, for voluntarily exposing himself to a known danger of such serious and imminent probable consequences. Under the doctrine which obtains in this state, as announced by our Supreme Court in Joske v. Irvine, 91 Tex. 574, 44 S. W.. 1059, and other decisions following it, a mere scintilla of proof is not sufficient to support a verdict; and in our opinion, no reasonable inference can be drawn from plaintiff's testimony, copied above, except that he was guilty of contributory negligence in going between the two box cars, under all the facts and circumstances related by him.

Several decisions are cited to support plaintiff's contention that the issue of his alleged contributory negligence was properly submitted to the jury, and that the verdict rendered thereon is binding upon this court, including Irvin v. G., C. & S. F. Ry. Co. (Tex. Civ. App.) 42 S. W. 661; Texas & N. O. Ry. Co. v. McLeod (Tex. Civ. App.) 131 S. W. 311 (boy tender age); Freeman v. Terry (Tex. Civ. App.) 144 S. W. 1016; Weatherford, M. W. & N. W. Ry. Co. v. Thomas (Tex. Civ. App.) 175 S. W. 822, cited above; S. A. & A. P. Ry. Co. v. Bergsland, 12 Tex. Civ. App. 97, 34 S. W. 155.

Those cases are distinguishable from the present suit by reason of the difference in the facts. In each case the plaintiff sued for damages for injuries received as the result of a sudden start of a train while he was passing between cars that were connected together and which constituted parts of a train; but in each case there was proof of something more than a mere semblance of excuse for taking that risk. In the first case cited, Irvin v. Ry. Co., it appeared that plaintiff stood at the crossing for 15 minutes waiting for the train to start. During that time, and just as plaintiff started between the cars, he was watching the engineer, who was leaning out of his cab and looking directly at plaintiff, or at least in line with his position, and by reason of that fact plaintiff concluded he could make the crossing before the train would start.

The case of Texas & N. O. Ry. Co. v. McLeod, supra, was for injuries to a boy 14 years old. The facts recited in the opinion, which the court held made the issue of contributory negligence on the part of the boy a question for the jury, were, substantially, as follows: After waiting at the crossing for ten minutes while it was blocked by a string of standing cars one-half mile long, and after seeing other persons older than he cross the track by going between the cars, and not seeing any engine attached to them, and believing it was a "dead train," he endeavored to cross the track on said street by going between two of the standing cars.

In Freeman v. Terry, supra, the testimony recited in the opinion, which was held sufficient to require the submission to the jury of the issue of plaintiff's contributory negligence, included the following: The train that blocked the crossing where plaintiff was injured while passing between two of its cars was a stock train that had stood on the same track in the city of Houston, from 3:30 o'clock p. m. until after 6 o'clock the same evening when plaintiff was injured, and while the train was engaged in loading stock from the stock pen. The engine was north of the pens, which were also north of the crossing where the injury occurred. The cars were loaded from the pens, one at a time, and when the loading of a car was finished the train would be pushed to the south to spot another car at the pens. The following is quoted from the opinion: "He [plaintiff] testified that he stood and waited a while to see if there was any occasion to move the train at that time, and hearing the men whooping and 'hollering' down at the pen, and knowing that they were loading cattle, he passed over between two cars, and while he was doing so the cars moved forward and backward and jammed together, and his foot was caught and injured."

In W., M. & N. W. Ry. Co. v. Thomas, supra, it appears that plaintiff Thomas was making a through shipment of his cattle over appellant's line of railway to Weatherford, its terminus, and thence to Fort Worth over the Texas & Pacific Railway, the connecting line. After appellant's train had stopped at Weatherford, plaintiff attempted to cross to the depot of the connecting carrier in order to get his shipping contract signed by that carrier, and while passing between two cars with his feet on the drawheads, the train suddenly started and caused him to be injured. As pointed out in the opinion, the evidence showed that it was customary for shippers, while at that station and under such circumstances, to cross between the cars as plaintiff did, and that the defendant not only knew of and acquiesced in that practice, but had invited it.

S. A. & A. P. Ry. Co. v. Bergsland, supra, was a suit for damages for injury to a boy nine years old while he was crawling between two cars, after he had been told he could safely do so by a man standing by whom he believed was one of the trainmen.

It would unduly extend this opinion to review the facts of the many other decisions of this state in which it was held that the issue of contributory negligence was a controverted issue of fact for determination by the jury,

and not by the court. The foregoing cases, we believe, are fairly typical of most of them.

Many decisions might be cited which we believe are more nearly applicable to the present suit, but only a few of them will be referred to.

In International & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 906, our Supreme Court reversed a judgment in favor of plaintiff Edwards and rendered judgment for the defendant, because the proof conclusively established contributory negligence of plaintiff. We quote from the opinion as follows:

"The evidence, without contradiction, shows that the plaintiff walked along the road at night, approaching the railroad obliquely, with his side towards it, until he came near the crossing when he turned with the road across the track, and was struck as he reached the center thereof. The train was visible by its electric headlight upon a straight track for a mile or more before it reached the crossing and the noise of its motion was plainly audible. Plaintiff admits that, before stepping on the track, he neither looked nor listened for the train, although he was familiar with the crossing and knew of the frequent passing of trains, and that he could have seen and heard it, had he done so. All of the other evidence is to the same effect. He relies alone upon the fact, which the evidence is sufficient to prove, that the whistle was not blown nor the bell rung as required by the statute, claiming that he was listening for those signals, and, because he did not hear them, did not look for the train nor pay any attention to the noise it made. * * *

"While persons using a railway crossing have the right to expect that the law requiring signals will be obeyed, this is not a substitute for the duty of exercising care for themselves and they are not excused from that duty by the fault of the other party. No case in this court has allowed a recovery upon facts such as these and the judgment cannot be permitted to stand without abolishing the rule, recognized by all authority, requiring the exercise of ordinary prudence on the part of persons crossing railroad tracks."

In Freeman v. Huffman, 61 Tex. Civ. App. 200, 130 S. W. 195, it was held that a person in undertaking to pass between cars to which was attached a live engine, without first notifying the engineer or persons in charge of the train of his intention so to do, was guilty of negligence, as a conclusion of law. And in the opinion in that case many authorities are cited to the same effect, including decisions from Indiana, Iowa, Kentucky, and Missouri, and the courts of this state; and quotations are made from several decisions of other states to the same effect as the following quotation from Elliott on Railroads, vol. 3, par. 1169: "Although a railroad company may be guilty of negligence in suddenly moving cars without warning which it had left at a crossing with a space between them, inviting people to pass through, but where no space is left between the cars, and engine is attached to them, which is liable to move them at any moment, one who attempts to pass over or under them may be declared guilty of contributory negligence as matter of law."

In San Antonio & A. P. Ry. Co. v. Singletary, 251 S. W. 325, by the San Antonio Court of Civil Appeals, opinion by Justice Smith (writ of error dismissed by Supreme Court), it was held that the evidence conclusively established contributory negligence of plaintiff's son, who was killed at a public highway crossing, in failing to discover the approach of the train in time to avoid the accident, notwithstanding the findings of the jury that the defendant was guilty of negligence which was the proximate cause of the injury in running the train at an excessive rate of speed and in permitting weeds to grow on the right of way, on account of which deceased could not see the approaching train.. In that case the following was quoted from Galveston, H. & S. A. Ry. Co. v. Ryon, 80 Tex. 59, 15 S. W. 588: "The less ability one has to discover approaching danger the more careful he should be in going within its reach." And other decisions of our Supreme Court were cited to the same effect; and in that connection this was added: "We make this last observation in response to appellee's testimony and argument that the deceased was traveling in a Ford car, the noise of which would lessen his ability to hear the signals and rumble of the train which struck him."

The language quoted from those two decisions is applicable to the precautions taken by plaintiff, as testified to by him, before attempting to cross between the cars, for in view of the hazardous risk which he says he appreciated, the same could not afford any reasonable assurance to him that he could make the crossing before the train would move.

█ The care which plaintiff was in duty bound to exercise for his personal safety in order to recover for the negligence of the defendant is designated in law as "ordinary care," but it is a familiar principle that the term has a variable meaning according to the different circumstances of each situation. In other words, the greater and more imminent the danger to be encountered, the more caution is required; and this rule has special application to plaintiff in this case, in view of the manifest hazard of his venture.

In the case of Baltimore & O. Ry. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645, there was a reversal of a judgment in favor of the administratrix of the estate of Nathan Goodman, who was killed at a public crossing of the railway as the result of a collision of a train with an automobile which deceased was driving; the judgment

of the trial court being based on the negligence of the defendant railway company. That judgment was reversed by the Supreme Court upon its finding that deceased was guilty of contributory negligence as a conclusion of law. It appears that until deceased approached within a distance of 12 or 20 feet of the crossing, his vision of the approaching train was obstructed by the section house, for a distance of 243 feet; that the train was running not less than 60 miles an hour, and deceased had reduced the speed of his car from 10 or 12 miles to 5 or 8 miles an hour, and those facts were relied on to refute the inference of contributory negligence. After reciting those facts, the court said: "We do not go into further details as to Goodman's precise situation, beyond mentioning that it was daylight and that he was familiar with the crossing, for it appears to us plain that nothing is suggested by the evidence to relieve Goodman from responsibility for his own death. When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him. In such circumstances * * * it seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk. If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop. It is true as said in Flannelly v. Delaware & Hudson Co., 225 U. S. 597, 603 [32 S. Ct. 783, 56 L. Ed. 1221, 44 L. R. A. (N. S.) 154], that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the Courts. See Southern Pacific Co. v. Berkshire, 254 U. S. 415, 417, 419 [41 S. Ct. 162, 65 L. Ed. 335]."

There is an instructive review of that decision and many decisions of the appellate courts of this state by Mr. Sol Goodelsky in volume 7, p. 128, of the Texas Law Journal (issued December, 1928), in which the writer intimates a possible conflict between the views expressed in the Goodman Case and those of the Texas courts. We express no opinion with respect to that question, but cite the Goodman decision because we believe that at all events the reasoning advanced supports our former conclusion.

For the reasons indicated above, the trial court erred in refusing appellant's request for an instructed verdict in its favor.

█ It is well settled that whether or not negligence, when established, is the proximate cause of an injury, is a separate and independent issue from that of the negligence complained of, and its proof is just as essential to a recovery as is a proof of negligence itself. Texas & P. Ry. Co. v. Reed, 88 Tex. 439, 31 S.

W. 1058; Gulf, C. & S. F. Ry. Co. v. Bennett, 110 Tex. 262, 219 S. W. 197; Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Campbell v. Johnson (Tex. Com. App.) 290 S. W. 526.

█ The Bigham Case just cited was a suit for damages sustained by the plaintiff when cattle confined in defendant's shipping pen broke through the gate and ran over him. The fastenings of the gate were defective, and plaintiff was engaged in tying it with a rope when the cattle broke out of the pen. That defect in the gate was due to defendant's negligence, by reason of which plaintiff secured a judgment. But the judgment was reversed, by reason of the conclusion reached that such negligence of the defendant was not the proximate cause of the injury, because an injury of that character, reasonably, could not have been anticipated as a probable result of that negligence, notwithstanding such negligence brought about the condition that rendered the accident possible. The decision of the same court in Seale v. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602, was cited with approval and was to the same effect; as was also the decision in Gulf, C. & S. F. Ry. Co. v. Bennett, supra. In the present suit, it was conclusively shown that none of defendant's employés engaged in handling the train was present when the accident happened or knew of plaintiff's presence, and there was an absence of proof to show that plaintiff or any one else might probably attempt to pass between the cars while the train was standing across the street. According to plaintiff's testimony, the accident happened about 10 o'clock at night, and no testimony was introduced to show that other persons in that vicinity were accustomed to pass over trains blocking street crossings, by climbing between the cars while the same were attached to a live engine with the engineer in his cab. Without some proof of that character there was no proper basis for the findings of the jury that any of the acts of negligence found by the jury either in blocking the crossing, or its failure to warn plaintiff that the train was about to move, was the proximate cause of plaintiff's injury; and the defendant's request for an instructed verdict in its favor should have been given for that reason, independently of the other reasons expressed in our conclusion on the issue of plaintiff's contributory negligence.

From the foregoing conclusions it follows that the judgment of the trial court must be reversed and judgment here rendered in favor of appellant; and it is so ordered.

There are other assignments of error which would probably cause a reversal of the judgment and a remand of the cause for another trial, at all events, but they will not be discussed or their merits determined because unnecessary, in view of what we have said above.