### BLUNT v. CHICAGO, M., ST. P. & P. R. CO.

District Court, N. D. Illinois, W. D. May 17, 1929.

No. 285.

William L. Pierce, of Belvidere, Ill., and Lisle W. Menzimer, of Rockford, Ill., for plaintiff.

M. L. Bluhm, of Chicago, Ill., and Burrell & James, of Freeport, Ill., for defendant.

WOODWARD, District Judge. At the close of the evidence for the plaintiff, a motion for a directed verdict is made on behalf of the defendant.

In passing upon this motion, the court is controlled by the rule announced in Union Pacific Railway Co. v. McDonald, 152 U. S. 262, 283, 14 S. Ct. 619, 627 (38 L. Ed. 434), as follows:

"The Court may withdraw a case from the jury altogether, and 'direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it.'"

This rule has been confirmed by a long line of succeeding cases both in the Supreme Court and in the Courts of Appeals, and is the established federal rule.

This case went to trial on the four amended counts and the two additional counts.

The first additional count charges willful negligence. There is no evidence to sustain this count. At all events, it would be the duty of the court to withdraw this count from the consideration of the jury.

The charges in the remaining counts may be summarized as follows: (a) That the defendant carelessly and improperly drove, operated and managed its locomotive and train; (b) that it failed to give a reasonable warning, by blowing a whistle or sounding a bell, of the approach of the train onto the crossing where the accident occurred; (c) that it operated its locomotive and train at an unreasonable rate of speed commensurate with the nature of the crossing and the safety of the plaintiff; (d) that the view of the

railroad was obstructed by trees, weeds, brush, and shrubbery which the defendant was under duty to cut, and by reason of such breach of duty the accident occurred.

Each count averred that the plaintiff, at and just prior to the time of the accident, was in the exercise of reasonable care and diligence for his own safety.

■ The facts as disclosed by the evidence are as follows: Between Durand and Shirland, the next station to the east, the railroad track—a single track—of the defendant runs generally east and west. The farm house of Art Fritz is situated north of the tracks and about two and one-half or three miles east of Durand. A public highway extends easterly from Durand on the south side of, and approximately parallel with, the tracks. Distant therefrom about 120 rods a private driveway or lane extends from the public highway to the Fritz home, which private driveway or lane runs almost north and south and crosses the railroad about 35 rods south of the Fritz home at approximately a right angle. This private driveway or lane has been used by Fritz for over 40 years as his only means of access to the public highway. Across the private highway or lane and on each side of the railroad right of way gates were, on the date of the accident, maintained and used.

East of the railroad crossing the railroad is straight. At a point about 600 or 660 feet west of the railroad crossing the railroad tracks curve to the south. There is a whistling post about 60 rods east of the crossing and another one about 110 rods west of the crossing.

At the crossing and on the north side of the tracks the private highway or lane passes through a cut, variously estimated from 5 to 8 feet above the roadway. This embankment extends for a considerable distance—perhaps 600 feet—to the west and on the north side of the tracks. On this embankment and immediately at the crossing, and from thence to the west, were growing high trees, brush, weeds, grass, and shrubbery of various kinds. The condition is made clear by plaintiff's and defendant's Exhibits 1 and 2, offered and admitted in evidence.

It is 50 feet from the north gate to the center of the track. The track is 4 feet 8½ inches between the rails. It is therefore 47 feet from the north gate to the south rail.

Exhibit 1 is a photograph taken with the camera 16 feet north of the center of the crossing. It shows a locomotive 585 feet west of the center of the crossing. The view is plain, distinct, and unobstructed. Exhibit 2 was taken with the camera in the same place, and shows just as plainly and distinctly a man standing on the track 519 feet west of the center of the crossing. The evidence is conclusive that from a point 16 feet north of the center of the tracks a distinct view can be had of the railroad and of a train for a distance of at least 585 feet to the west of this crossing.

Plaintiff is a young man, 21 years of age in November, 1928. On September 23, 1927, he was in normal health, except for some trouble with his heart. His hearing and eyesight were both good. He worked for Fritz. About 6 o'clock on that evening, after having his supper at the Fritz home, he got in his Ford sedan and started for Durand, using the private highway to gain access to the public road. He went to the gate north of the railroad, opened it, drove his car through the opening, and stopped his car with its rear 15 feet from the gate. The Ford is 11 feet long, so that the front of the car was 26 feet from the north gate. The driver's seat is 3 feet back from the front of the car. The driver's seat, then, was 27 feet from the center of the track. The plaintiff testified, and he is corroborated by the witness, Swart, that after closing the gate he walked to the track and looked both east and west, looked up and down the track, and saw no train.

Plaintiff had lived in that community for some time. He had worked for Fritz all summer, and had used this crossing many times. He knew that a train was scheduled to leave Durand at 5:32 that evening, and also knew that when he went to look that the train had not yet passed.

Plaintiff testified that, after he went to the track, he then walked back to the car, got in it, and remembers no more for several days. Witness Swart testified that he (plaintiff) walked back to the car. Both plaintiff and witness Swart testified that from where the car was standing, if he had looked, he would have had a clear view as far as shown in Exhibit 1. Neither plaintiff nor witness Swart heard any bell or whistle.

Plaintiff drove on to the crossing, where his Ford sedan was struck by the front of the locomotive, and plaintiff was severely injured.

The motion now before the court raises two questions: (1) Whether the defendant was guilty of negligence; and (2) whether the plaintiff was guilty of such contributory negligence as will bar a recovery.

The evidence—much of which is not recited—leaves no room for doubt but that the defendant was guilty of negligence.

The only remaining question is whether plaintiff is barred of recovery by reason of contributory negligence.

In the decision of this question, the rule by which this court is governed is that laid down by the Supreme Court of the United States in the case of Baltimore & Ohio R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 25, 72 L. Ed. 167, 56 A. L. R. 645, as follows:

"We do not go into further details as to Goodman's precise situation, beyond mentioning that it was daylight and that he was familiar with the crossing, for it appears to us plain that nothing is suggested by the evidence to relieve Goodman from responsibility for his own death. When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk. If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop. It is true as said in Flannelly v. Delaware & Hudson Co., 225 U. S. 597, 603, 32 S. Ct. 783, 56 L. Ed. 1221, 44 L. R. A. (N. S.) 154, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the courts. See Southern Pacific Co. v. Berkshire, 254 U. S. 415, 417, 419, 41 S. Ct. 162, 65 L. Ed. 335."

The Goodman Case, while not expressly approved by name, is applied by the Supreme Court of Illinois in the case of Greenwald v. B. & O. R. Co., 332 Ill. 627, 164 N. E. 142. Mr. Justice Stone, in discussing the rules of law applicable to a situation analogous to the one presented by this record, uses the following language: ·

"One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look or in crossing a railroad track in reliance upon the assumption that a bell will be rung or a whistle sounded. No one can assume that there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care. The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it."

The Goodman Case is expressly approved by the Appellate Court of Illinois, First District, in the case of Goodman v. C. & E. I. Ry. Co., 248 Ill. App. 128.

The language of the Circuit Court of Appeals of the Fourth Circuit, in the case of Sertich v. Baltimore & O. R. Co., 29 F. (2d) 112, is applicable to the record in this case:

"Plaintiff was thoroughly familiar with the crossing where he was injured. When he drove upon it, he knew that the fast train which struck him was due. Notwithstanding this, he drove his heavily overloaded truck onto the crossing from behind box cars which stood on a spur track and which shut off his view in the direction from which the train was approaching. He took no precautions other than to stop just before reaching the box cars and listen for the train with the noisy motor of his truck still running. Not hearing the train, he proceeded, although he knew, or should have known, that, if it was approaching, he would be in the danger zone before he could see it. He voluntarily took the chance which the situation involved, and, under the doctrine of the Goodman Case he cannot recover."

Many other cases might be cited and quoted from. The peculiar significance of the Goodman Case—a conclusion warranted by the unmistakable language of Mr. Justice Holmes—is well stated by Judge FitzHenry in the case of Conrad v. Wheelock (D. C.) 24 F. (2d) 996, 999:

"I do not understand that the Supreme Court of the United States laid down any new rules in the Goodman Case. It does not reverse, or modify, or change, in any respect, the substantial rules in negligence cases of the character there disposed of by the court. But it does this: It admonishes the Circuit Courts of Appeal and the United States District Courts that it is their duty to apply the law in cases of this character."

Is the Goodman Case applicable to the case now under consideration? This court is of the opinion that it is.

The plaintiff was in full possession of his faculties of sight and hearing. He knew his surroundings. He had crossed this track many times. He knew that a train was coming from the west. He drove his car to within 23 feet of the track, stopped it, walked to the track, walked back to the car, got in, shifted his gears, and started forward. Assume that both he and witness Swart are in

error when they state that he (plaintiff) had an obstructed view to the west from where the car stood; assume that from that point to the west his view was obscured by the embankment and the trees, brush, and weeds growing thereon—yet the evidence is undisputed that from a point 16 feet north of the center of the track he could see west for a distance of 585 feet. He must have been moving at a slow rate of speed. It was not dark. The sun had just set. The inference is inevitable that had he looked—and the law charged him with the duty of looking—he would have seen the approaching train in time to have avoided the accident. If he failed to look, he was guilty of negligence. If he looked and did not stop, he was guilty of negligence.

Motion allowed.